**In the Matter of Edward G. CASSA-
VAUGH and Mary Ann
Cassavaugh, Debtors.**

**Bankruptcy No. 84–00615–SJ–W–11.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Nov. 6, 1984.

---

Darold W. Jenkins, Independence, Mo., for debtors.

## ORDER DISMISSING CHAPTER 11 PROCEEDINGS WITH PREJUDICE

DENNIS J. STEWART, Bankruptcy Judge.

The within chapter 11 proceedings were filed on February 24, 1984. Since that time, some eight months have passed during which the debtors have not put before the court a plan of reorganization which could be confirmed under the standards set forth in section 1129 of the Bankruptcy Code. The delay in filing a proposed plan and disclosure statement has been, in the meantime, punctuated by the unavailing efforts of the court to encourage the prosecution and movement forward of the case,[1] and to ensure the filing of a disclosure statement which was sufficient under the standards imposed by section 1125 of the Bankruptcy Code.[2] Ultimately, it was necessary for the court to set a hearing on both of the issues of whether a defective disclosure statement had been satisfactorily amended[3] and on confirmation of a proposed plan for Friday, November 2, 1984,

1. The debtors filed a proposed plan and disclosure statement timely, within 120 days of the date of commencement of these chapter 11 proceedings. The court initially entered its order on June 5, 1984, setting a hearing on the sufficiency of the disclosure statement for July 2, 1984, in Kansas City, Missouri. It was necessary to cancel this scheduled hearing because of the contentions made by the Administrative Office of United States Courts that the bankruptcy judges' tenure had lapsed as of June 28, 1984. Thereafter, the court issued its order on July 12, 1984, after the signing of the Bankruptcy Amendments and Federal Judgeship Act of 1984 into law on July 10, 1984, setting a hearing for August 2, 1984, in St. Joseph, Missouri, on the debtor's motion for leave to incur credit. The debtors did not appear for that hearing, did not request any continuance of it, and did not notify the court for any reason for their nonappearance. The hearing was attended only by the objecting creditor, the Nodaway Valley Bank. The court, accordingly, did not grant the debtors leave to incur credit, as requested. An order was subsequently issued by the court on August 1, 1984, setting a second hearing on sufficiency for the disclosure statement for August 28, 1984. In the course of that hearing, the court found the debtors' disclosure statement to be deficient under the standards of section 1125 of the Bankruptcy Code and directed that amendments be made according to oral instructions then given by the court on or before September 15, 1984. The debtors untimely submitted amendments purporting to comply with the court's instructions, whereupon, on October 3, 1984, the court issued its order setting a confirmation hearing for November 2, 1984, in St. Joseph, Missouri, making the following observations:

"The debtors have now submitted to the court an amended disclosure statement purporting to comply with the instructions orally given by the court in the hearing held on the sufficiency of the disclosure statement. The court hereby tentatively approves the amended disclosure statement and grants the debtors leave to solicit acceptances on the basis thereof. The creditors, however, may still demonstrate its insufficiency in the course of the forthcoming confirmation hearing. In view of the fact that the debtors have previously been granted the benefit of instructions by the court in the hearing on the sufficiency of the disclosure statement, the penalty for any demonstrated insufficiency in violation of those instructions can only be denial of the proposed plan of reorganization."

2. See note 1, *supra.*

3. See note 1, *supra.*

in St. Joseph, Missouri. At the same time, a hearing was convened on the motions of the creditors Nodaway Valley Bank and Farmers Home Administration to dismiss these chapter 11 proceedings for delay prejudicial to creditors and for inability of the debtors to effectuate a plan of reorganization.[4]

In the course of the hearing convened on that date, counsel for the debtors adverted to the principal material facts that the current income of the debtors does not permit any current payments to creditors and that the debtors, at the same time, because of the particular constellation of secured and unsecured debts, cannot gain acceptance of any plan by any class of creditors.[5] Consequently, although the debtors had been granted leave to solicit acceptances by the prior order of this court, they did not do so and therefore could not be prepared to go ahead with the confirmation hearing. Their counsel stated at the outset of the hearing that there is "no way" that a plan of reorganization could be formulated which could be confirmed and that, therefore, the only course open to the debtors was to request that these chapter 11 proceedings be dismissed. The creditors then present requested that the dismissal be with prejudice; whereupon the debtors offered to demonstrate the value of their property, apparently as a preface to some type of proposal to "redeem" the property for its value.[6] But the debtors were not able to demonstrate their entitlement to such relief because they could not show the existence of any assenting class to a plan of reorganization as required by section 1129(a)(10) of the Bankruptcy Code.[7] As noted above, although the debtors had been granted leave to solicit acceptances of a proposed plan by a prior order of this court, they had failed to do so.

The failure of the debtors to prosecute these chapter 11 proceedings in the face of the creditors' motions to dismiss and thereby, by means of the delay, to work prejudice to the rights of the creditors warrants a dismissal with prejudice. As this court has pointed out on prior occasion, such a dismissal is in substance a dismissal for want of prosecution, which is ordinarily a dismissal with prejudice.[8] The facts of this case which have been recounted above demonstrate the unjustified delay which has taken place and the admitted impossibility of formulating a confirmable plan. Prejudice to the rights of creditors is

---

**4.** The motion of the Farmers Home Administration to dismiss these chapter 11 proceedings had been filed on September 28, 1984, and, on October 5, 1984, this court entered a written order setting it for a hearing in conjunction with the confirmation hearing on November 2, 1984. A similar motion was filed by the creditor Nodaway Valley Bank on September 25, 1984, stating that: "Debtors have wholly failed to timely supplement their Disclosure Statement and comply with this Court's August 28, 1984, order. Debtors' continued delay is prejudicial to this and other creditors and is grounds for dismissal pursuant to 11 U.S.C. section 1112. This creditor has not consented and does not consent to Debtors' delay in responding to this Court's August 28, 1984, order."

**5.** Although the schedules filed by the debtors appears to show that the value of their property slightly exceeds the total of outstanding indebtedness, the Nodaway Valley Bank contended in the hearing of November 2, 1984, without contradiction by the debtors, that they have a sufficient unsecured claim to prevent the class of unsecured creditors to be an accepting class.

**6.** In respect to real property, however, in bankruptcy proceedings, redemption cannot be ac-complished outside of a confirmed plan in chapter 13 or chapter 11 proceedings, because such confirmation assures that the debtor also puts his unsecured property, if any, at the disposal of the creditors to apply any deficiency above the value of the real property. Thus, the court could not go ahead with the consideration of a "redemption" unless the debtors demonstrated their right to have a chapter 11 plan confirmed.

**7.** "The court shall confirm a plan only if all of the following requirements are met.... At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class." Section 1129(a)(10) of the Bankruptcy Code.

**8.** See *In re Missouri*, 22 B.R. 600, 602 (Bkrtcy.E. D.Ark.1982). When a dismissal for want of prosecution does not specify that it is without prejudice, it operates "to preclude the initiation of a suit based on the same cause of action." *Papilsky v. Berndt*, 466 F.2d 251, 256 (2d Cir. 1972).

demonstrated by the same facts, for it is, under the provisions of the current Bankruptcy Code, a violation of the rights of secured creditors to keep the automatic stay in effect when there is no prospect of a confirmable plan. Further, as observed above, these chapter 11 proceedings have now pended for some eight months during which the debtors have made little or no payment to secured creditors nor offered them any other form of "adequate protection" such as is required by section 361–363 of the Bankruptcy Code.[9] Under the law which applies under these sections, even an undersecured creditor is not adequately protected simply by the value of its collateral, as counsel for the debtors has repeatedly suggested in these proceedings. Rather, the undersecured creditor is entitled to adequate protection of the use value of its collateral. *In re American Mariner Industries, Inc.,* 734 F.2d 426, 435 (9th Cir.1984) ("We hold that Crocker National Bank is entitled to compensation for the delay in enforcing its rights during the interim between the petition and confirmation of the plan.") This protection must continue even after confirmation of the plan.[10] And the rights of oversecured creditor are, if anything, greater.[11] But, in the case at bar, there is admittedly no offer or

potential for such adequate protection. The bankruptcy court must therefore conclude that, not only is there a ground for dismissal in that there has been delay prejudicial to creditors, but also that there is a readily apparent inability to effectuate, or achieve confirmation of, a plan of reorganization.[12] Under such circumstances, in the face of creditors' motions to dismiss, the court has no legal alternative but dismissal.

All this seems to be admitted by counsel for the debtors, who nevertheless urges the court and creditors to infuse into the bankruptcy process a form of relief which can be meaningful to a farm debtor who has no significant current income to offer to creditors and whose future potential is wholly speculative and uncertain. Under such circumstances, if the debtors, as is admittedly the case at bar, cannot obtain the consent of at least one class of creditors, the only possibility, it seems, would be an indefinite moratorium on payments to secured creditors. But such relief in bankruptcy has previously been held by the Supreme Court of the United States to be an unconstitutional taking of property rights without due process of law in *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935).

**9.** Under the provisions of section 362(d)(1) of the Bankruptcy Code, adequate protection is required as a prerequisite for keeping the stay in effect prior to confirmation of a plan of reorganization.

**10.** "(W)ith respect to postbankruptcy interest which may be payable on an undersecured debt, it is said that an undersecured creditor 'may first apply interest or income earned on the security after the filing of the petition to interest thereafter accruing on the debt.' ... 'This rule is applied when the debt is secured by a mortgage on real estate or collateral which yields interest or dividends during the pendency of the proceedings, in which case the income is applied to payment of the interest until the day of the sale.' *Littleton v. Kincaid,* 179 F.2d 848, 852 (4th Cir.1950). Thus, when, as in chapter ... proceedings, the interest-bearing value of the property itself is kept in the estate, it appears proper to award postbankruptcy interest at the market or legal rate to compensate the creditor for loss of this interest potential. And, since this interest is bounded by the value of the

collateral, it must recede as that collateral is progressively paid for. Accordingly, when the balance due is brought down to points below the value of the collateral, then the interest is paid on the declining balance due." *Matter of Johnston,* 44 B.R. 667 (Bkrtcy.W.D.Mo.1984).

**11.** In some cases, it has been held that the debtor may delay payments to an oversecured creditor because of the "equity cushion" which exists in the collateral and which is said to adequately protect the oversecured creditor. But, unless the "equity cushion" is quite large, an oversecured creditor may quickly become an undersecured creditor. And the delay in payments, furthermore, works great prejudice to the unsecured creditors, whose potential rights in the unsecured "equity cushion" may be quickly consumed by postbankruptcy fees, costs, and interest charges. See section 506(b) of the Bankruptcy Code.

**12.** See note 5, *supra.*

It is true that, in a later decision, the Supreme Court held that a temporary moratorium on payments might be in consonance with constitutional principles. *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke*, 300 U.S. 440, 57 S.Ct. 556, 81 S.Ct. 736 (1937). But, as noted above, the current bankruptcy law, with its demands for pre-confirmation adequate protection, does not travel the full distance which the *Wright* decision, *supra*, makes constitutional.

It seems now to be urged that the time is ripe for the court system to widen its horizons in respect of these farm chapter 11 cases. In his statements before this court, counsel for the debtors mentions that the situation of the small farmer in our district is a "time bomb" which the courts should prepare themselves to defuse. In respect of the contention that farm bankruptcies are increasing, the files and records of the bankruptcy court fully support counsel's statements. This type of case initially began, three or four years ago, to appear in groups of two and three before the court, but now they appear in great numbers. And, as in this case, in all too many of the cases, there is little or nothing the current bankruptcy system can do to rehabilitate the farm debtors. The current code makes bankruptcy a virtually useless alternative if there is no prospect of earning a profit in the foreseeable future—and, in a disheartening number of farm cases, as in this one, that prospect cannot be demonstrated.

The result is that the bankruptcy court has commenced to see a parade of farm debtors—hard workers, good citizens, once proud and once productive—who are caught in this catastrophic transformation of the rural economy and who are suffering the insufferable—the loss of home and a lifetime vocation in one fell swoop. But the scourging of the countryside seems to fall upon the doorstep of the bankruptcy court at a time in its history when it is less able than in almost any prior epoch to deal with it. Its judges currently sit under a cloud affecting their tenure which far removes them from the ability to transcend statutory limitations in favor of the full width of equity which may be allowed by constitutional principles.[13] As a private citizen, a judge might wish that more could be done. But, as a judge, he must always and everywhere be mindful of the limitations which the law imposes upon him. "The court cannot be wiser than the law." *Matter of Anderson*, 12 B.R. 483, 491 (Bkrtcy. W.D.Mo.1981).

It is therefore, for the foregoing reasons,

ORDERED that the within chapter 11 proceedings be, and they are hereby, dismissed with prejudice.

---

**13.** It has long been asserted that only Article III judges may determine constitutional questions. *Crowell v. Benson*, 285 U.S. 22, 46, 52 S.Ct. 285, 290, 76 L.Ed. 598 (1931). While there is some indication that, under the Bankruptcy Amendments and Federal Judgeship Act of 1984 that the bankruptcy court is intended to be an Article III court (for all jurisdiction is confided to the Article III district court and the bankruptcy judges are made judicial officers of the district court), and its properly-appointed judges may therefore be, in some sense, Article III judges (Even when not "invested upon confirmation with Article III tenure and compensation," judges may become so invested, "depending upon the constitutional status of the courts to which they were primarily appointed." *Glidden Co. v. Zdanok*, 370 U.S. 530, 538, 541, 82 S.Ct. 1459, 1466, 1468, 8 L.Ed.2d 671 (1962)), the Administrative Office of United States Courts has contended that the currently sitting bankruptcy judges have not been validly appointed. See the letter of July 11, 1984, of the Director of the Administrative Office of United States Courts to Senator Strom Thurmond to the following pertinent effect: "(T)he terms of office of all bankruptcy judges expired—by operation of law—at midnight, June 27. Section 121 of the new law attempts to correct the situation by retroactively extending the terms of these individuals. Since these individuals were not in office on the date of enactment, section 121 may easily be viewed as an attempt by Congress to make appointments to bankruptcy judgeships—a power Congress clearly does not have under the appointments clause of the Constitution."