**In re James E. CANION, Debtor.**

**Bankruptcy No. 88–05955–H4–11.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Aug. 11, 1989.

Gregory T. Farrell, Houston, Tex., for debtor.

## MEMORANDUM OPINION

WILLIAM R. GREENDYKE, Bankruptcy Judge.

This matter came on for hearing on the motion of David R. Murphy ("Murphy"), a creditor seeking conversion of the debtor's Chapter 11 proceedings to Chapter 7, or appointment of a trustee in the Chapter 11. A hearing was held after notice to all par-

ties entitled to notice. Pursuant to Bankruptcy Rule 7052, the following constitutes the court's findings and conclusions. To the extent any purported findings would be more properly characterized as conclusions, they should be considered as such; to the extent that any purported conclusions are in fact better characterized as findings, they should be considered as such.

This court has jurisdiction over this dispute under 28 U.S.C. § 1334, and this matter constitutes a core proceeding under 28 U.S.C. § 157(a)(2).

The debtor, James E. Canion, filed his voluntary petition for relief under Chapter 11 of the bankruptcy code on July 12, 1988. Murphy filed his Motion to Convert or Appoint Trustee on April 14, 1989. On April 28, 1989, two other creditors, Callaway & Associates, Inc. and Old Stone Bank, both filed Motions for Leave to Intervene in the motion filed by Murphy. Intervention was allowed and the matter was set for hearing on May 11, 1989. As of the time of the hearing on the Motion to Convert or Appoint Trustee, no plan or disclosure statement had been filed by the debtor.

The debtor is basically a real estate developer and entrepreneur. His concept for reorganization centers around the holding of his remaining real estate assets or partnership interests, counting on the economy to improve, and speculating that the appreciation in the value of his properties would exceed the administrative and holding costs and that a gain would be realized. The debtor resides with his family in a large home in a Houston suburb. The debtor's operating statements have been amended at least twice prior to the hearing on Murphy's motion. The parties have stipulated that the debtor has expended over $20,000.00 for house payments since the date of filing. The debtor has also expended over $18,000.00 on credit card expenses and over $14,000.00 on car payments since the date of filing. Mr. Canion owns or maintains six automobiles used by both him and his family. Car repairs and maintenance expenses have required additional expenditures of $9,000.00 during the same time period. The debtor has also paid, post-

petition, $3,000.00 for country club charges, $26,000.00 on various expenses related to his children, and $4,500.00 on yard and pool maintenance.

The parties also stipulated that the debtor transferred his interest in a note receivable to trusts established for the benefit of his children approximately thirteen months prior to filing of his petition for relief under Chapter 11. The debtor received no consideration for this transfer of interest in the note receivable to the children's trust. Since the date of filing of the Chapter 11 case, the debtor has received distributions from the children's trust and has commingled these funds with funds of the bankruptcy estate. We find the total distributions from the children's trust to the debtor to be in the amount of $36,000.00, as of the date of the hearing. The debtor has made various payments post-petition, to pre-petition unsecured creditors. While we find these payments to have been innocently made, we also conclude that they are inappropriate and contrary to the provisions of title 11.

The debtor stipulated that he transferred a parcel of real estate (the "April Point" condominium) to an attorney, Tom Alexander, in February of 1988. Alexander was an attorney representing debtor in a state court suit brought by Murphy against the debtor. The transfer of the condominium in February, 1988 was made within one year of the filing of the bankruptcy, but more than 90 days before the filing of the case. The transfer also occurred approximately one month after a judgment was entered in state court in favor of Murphy, against Canion, in the approximate amount of $500,000.00. The debtor has stipulated that his liabilities, including contingent liabilities, exceeded his assets at the time of the transfer of the April Point condominium to Alexander.

The debtor has not, to this date, brought any preference or fraudulent transfer actions against any party. The debtor testified that he has no intention of bringing any preference or voidable transfer actions against any party.

The debtor stipulated that he failed to list or disclose (in his statement of financial affairs or his schedules) both a significant asset of the estate, as well as a significant secured transaction which occurred shortly before the filing of the case.

The debtor has made approximately $10,000.00 worth of payments, post-petition, to an accountant for the estate who has not been authorized by the court to represent the estate, and for which no application for services or expenses has been made to the court. Similarly, the debtor paid approximately $1500.00 to an out-of-state attorney to represent his son in a DWI case, also without notice, application for payment, or approval of the court.

The debtor testified he has generated income (since the date of filing of his petition for relief) in the approximate amount of $180,000.00. He also thought that the expenditures of the estate were approximately $190,000.00. When questioned about the $10,000.00 loss as an indication of the viability of his real estate development business, the debtor responded that business was "fair" and continued by saying "I have had worse and I have had better". When questioned about the lack of a plan or a disclosure statement on file, the debtor expressed his willingness and readiness to file a plan but was unable to give any specifics about any proposed plan other than the generalities mentioned above.

The debtor is trained and was originally certified or licensed both as a CPA and an attorney, although he has since let his licenses lapse.

The court takes judicial notice of the contents of its docket in the main case and finds that on November 14, 1988, Murphy filed against the debtor adversary number 88–1006, in the form of a complaint to determine non-dischargeability of debt under § 523 of the Code. The court also notes the parties, Murphy and debtor, have previously litigated an objection to exemption with respect to the debtor's claimed rural homestead exemption. This court ruled against the debtor with regard to the claimed exemption and has directed the

debtor to divest himself of all but one acre with the improvements thereon for purposes of his homestead exemption. On February 22, 1989, debtor's counsel made their first interim application for legal fees and reimbursement of out-of-pocket expenses. The application was objected to and set for hearing at the same time as the hearing on the Motion to Convert or Appoint Trustee filed by Murphy. The primary objection of Murphy to the application centered around the request for the estate to reimburse Canion's lawyers for representing him both in the discharge matter and the matter concerning the exemption. The court has made no ruling with regard to the fee application.

Murphy and the other creditors have alleged that cause for conversion or appointment of a trustee exists because of the debtor's incompetence, gross mismanagement, dishonesty, and "other similar grounds", pointing to the losses reflected by the operating reports. They also claim the debtor has failed to schedule assets and liabilities, he has failed to bring certain voidable transfer actions, and that he has made various payments without approval of the court and without notice. The creditors also want this court to consider or to give weight to the pre-petition transactions involving the attorney Alexander, and the creation of the children's trust, as some indication, we suppose, of the debtor's character and integrity.* The creditors emphasize the excessive personal expenditures of the debtor as a cause for conversion, as well as expressing general allegations of inability to effectuate a plan, continuing loss to or diminution of the estate, and the absence of a reasonable likelihood of rehabilitation, under 11 U.S.C. § 1112(b).

After conclusion of the evidence and the presentation of argument by all counsel, the court took the matter under advisement for the purpose of examining the standards which are to be applied in a Chapter 11 case involving an individual debtor involved in business.

■ We do not need to decide the issue of whether or not an individual must be engaged in business to ask for relief under Chapter 11. The debtor in this case clearly purports to be engaged in business. As a backdrop for the following discussion, however, it is necessary to observe that section 109(d) of the Bankruptcy Code does not bar non-business debtors from relief under Chapter 11 of the Bankruptcy Code. *See Grundy National Bank v. Shortt*, 80 B.R. 802, 804 (W.D.Va.1987); *Cf. In re Warner*, 30 B.R. 528, 529 (9th Cir.BAP 1983). It is also clear that Chapter 11 has a definite business "flavor" to it. The legislative history indicates that Chapter 11 was designed primarily for businesses, although individuals would be permitted to use the Chapter. Indeed, both the House and Senate noted that the procedures of Chapter 11 would be sufficiently burdensome and complex that their use would only make sense in a business context and not in consumer cases. *See* S.Rep. No. 989, 95th Cong.2nd, Sess. 3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5789; and H.Rep. No. 595, 95th Cong., 1st Sess. 6 (1977), U.S.Code Cong. & Admin.News 1978, p. 5968.

In the face of an argument that Chapter 11 is or should be unavailable to consumer debtors, the better conclusion is that "Chapter 11 is available to wage earning, consumer debtors willing to master the procedural complexities and shoulder the attendant costs." *Grundy National Bank v. Shortt*, 80 B.R. 802, 806 (W.D.Va.1987), citing *In re Gregory*, 39 B.R. 405, 409 (Bankr.M.D.Tenn.1984).

In the case at bar, we have an individual debtor who is clearly a consumer but who also purports to be involved in business, albeit a foundering and speculative business. Because of the amount of debt the debtor Canion is confronted with, he is ineligible for relief under Chapter 13 of the Code. 11 U.S.C. § 109(b). If we start with the proposition that individual debtors who may not be eligible for Chapter 13 relief

---

* We refuse to give this sort of weight to the testimony and findings with respect to the establishment of the trusts and the transfer to Alex-

ander. Those matters do not concern this court except to the extent that they indicate an *issue* of preferential or voidable transfer may exist.

are not barred from utilizing Chapter 11, the question remains what will be the guidelines for handling these individuals. The obvious place to start is by stating that the same rules that govern business debtors must also govern individual debtors. That is to say, the standards of section 1112(b) of the Code must apply as fully, fairly, and equitably to individual debtors and their creditors as they do to business debtors.

The Fifth Circuit Court of Appeals has established the standards by which Chapter 11 debtors, including putative business entities, should be judged for good faith or bad faith in the filing of a case. *In re Little Creek Development Corp.*, 779 F.2d 1068 (5th Cir.1986). Based on the rationale of *Little Creek*, when a court is confronted with a business entity that does not really have a business other than speculation, without any cash flow or employees, and little prospect for reorganization, cause exists for dismissal. This dismissal may occur because of a lack of good faith in filing or, under 11 U.S.C. § 1112(b)(1) & (2), the court may find an absence of a reasonable likelihood of rehabilitation or the inability to effectuate a plan.

Similarly, other Chapter 11 requirements such as the absolute priority rule (11 U.S.C. § 1123(a)), rules with regard to disclosure statements (11 U.S.C. § 1125), the fiduciary obligations of debtors-in-possession to their creditors (11 U.S.C. § 1107(a); *see also In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 576 (Bankr.N.D.Tx.1986)), as well as the fiduciary obligations of counsel for individual debtors-in-possession (11 U.S.C. § 1107(b); *see also In re Hargis*, 73 B.R. 622, 626 (Bankr.N.D.Tx.1987), must also apply in individual or consumer Chapter 11 cases. But those requirements are just the starting place; they are just the first part of the whipsaw which confronts individual Chapter 11 debtors. The second part of the whipsaw comes into play only when the debtors are individual debtors, whether business or consumer. If a debtor is an individual, he or she is saddled with the burden of acting not only as a representative of the estate, but also in his or her own behalf in defense or preservation of personal rights. *Fanelli v. Hensley (Matter of Triangle Chemicals, Inc.)*, 697 F.2d 1280, 1290 (5th Cir.1983). These roles are often inconsistent. The individual debtor-in-possession will have an inherent conflict because of potential issues regarding dischargeability and exemptions; the debtor may also face conflicts regarding preferences and voidable transfers. In the absence of an active creditors' committee or a vocal individual creditor, those potential conflicts will go largely unchecked in a Chapter 11 case.

The incongruity of an individual debtor sitting in Chapter 11 is further demonstrated when one compares Chapter 11 life with life in a Chapter 13 case. Self-control without a great deal of supervision is one of the privileges enjoyed by the debtor-in-possession in a Chapter 11 case. In stark contrast, the same debtor in a Chapter 13 proceeding is required to file a plan within 15 days from the date of filing of his petition for relief (Bankruptcy Rule 3015), a creditors' meeting is held relatively soon thereafter and, in this court's experience in this district, a plan is usually either confirmed or denied within approximately six months of the date of filing of the case. The debtor's budget in a Chapter 13 case is quickly subject to the scrutiny of both the trustee and creditors and, upon confirmation, the court. In other words, in a Chapter 13 case any questions concerning the debtor's lifestyle, proposed expenditures for personal matters, and the administration of his estate would receive a great deal of attention in a very short amount of time. If a creditor in a Chapter 13 case involving the debtor Canion, with these assets and these expenditures were to object to confirmation on the basis of good faith or disposable income, we would feel obliged to take a very dim and hard view of the expenses stipulated to by the parties in this case. Such a comparison to the debtor's potential treatment under Chapter 13 seems natural, equitable, and inescapable from the standpoint that it does not seem appropriate for a debtor with more debt and more potential assets to be dealt with more favorably than one with less debt and fewer assets.

We have immense discretion in handling *any* reorganization, but that discretion is bounded on all sides in this instance by the provisions of Chapter 11. Even if we choose to make an individual's Chapter 11 plan emulate a Chapter 13 plan, to the extent that such a plan (even though forged with the courts direction) would be inconsistent with sections 1129(a) or 1141 of title 11, we would have no discretion and no ability to leave the parameters of the Code. We also hesitate to exercise our equitable powers to make a Chapter 11 experience less rigorous or less of a fiduciary obligation for an individual than it would be for a business entity.

■ Our obligation here is not to formulate or shape the law but to interpret and apply it to the facts. We conclude individuals with the means of funding or effectuating a Chapter 11 plan may, in good faith, file and prosecute such petition for relief. *Grundy,* 80 B.R. at 805. However, all debtors in Chapter 11 are bound by the same rules and obligations. When it becomes apparent (1) that a debtor has made unreasonable expenditures and numerous mistakes in handling the case; (2) that delay is unreasonable and prejudicial; and, (3) that there is not a reasonable likelihood of rehabilitation, then we will cease all efforts to reorganize. 11 U.S.C. § 1112(b). "Cause" for dismissal or conversion is not limited to the examples enumerated under 11 U.S.C. § 1112(b). 5 Colliers on Bankruptcy (15th Ed.1979) § 1112.-03[d]. In this case, because the debtor is an individual, we must look at and deal with the inherent conflicts which have arisen and factor those into our decision as to whether or not the Chapter 11 case is progressing as it should and is being handled properly. We have previously noted the tremendous amount of personal expenditures made by the debtor during the pendency of this case. We find these expenditures to be far in excess of what is reasonable, necessary, or in the best interest of the creditors. Debtor has failed to abide by a number of administrative requirements necessary to be adhered to in chapter 11. The debtor has demonstrated a tremendous inability to directly and accurately disclose to the court and creditors his assets upon the filing of his case, as well as his income or asset acquisitions since the date of filing. There has been a very candid failure to pursue or examine preferences or voidable transfers, when those issues exist. The debtor has testified, and the court has found, that income does not exceed expenses. The foregoing findings lead to the conclusion that the debtor has failed in his attempt to balance his personal interests with his fiduciary obligation to the creditors and the estate. Finally, after ten months in these Chapter 11 proceedings, there has been no plan or disclosure statement filed. We do not think this amount of time is reasonable under the circumstances. That is, given the nature of debtor's plan concept, there no longer seems a possibility that the debtor can successfully reorganize within a reasonable amount of time. Confronted with these facts, the creditors in this case have done as they have been directed by our circuit court and have asked this court to convert. *In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363 (5th Cir. 1987), aff'd, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Based upon the findings and conclusions made above, we feel conversion is appropriate under the circumstances.

A separate form of order will be entered this day directing conversion of this case to one under Chapter 7 and allowing for the appointment of a trustee in accordance with Local Rules.