**In re Phyllis COHEN, Debtor.**

**Bankruptcy No. 92–16014–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

July 11, 1994.

Kathleen L. Donohue, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, FL, for appellant.

## MEMORANDUM OPINION AND ORDER DISMISSING WITH PREJUDICE DEBTOR'S CHAPTER 11 PROCEEDING

A. JAY CRISTOL, Chief Judge.

THIS CASE was heard on March 2, 1994, to consider confirmation of Debtor's Third Amended Plan of Reorganization and on the United States of America's objections thereto and on the United States of America's *ore tenus* motion to dismiss Debtor's Chapter 11 proceeding, which motion was supported by the United States Trustee's Office, by the Chapter 11 Trustee and by the counsel for the Chapter 11 Trustee.

The Court having reviewed the Motion, response by the Debtor, and supporting documentation and having heard the arguments of counsel, finds and concludes as follows:

### I. FINDINGS OF FACT

In June of 1992, an Internal Revenue Service (hereinafter referred to as "Service") revenue officer seized Debtor's condominium located at Plaza 15, Condo # 514, 1600 SE 15th Street, Ft. Lauderdale, Florida 33316. Debtor owned the condominium jointly with her husband, Barry Cohen. The revenue officer had set the date of the forced sale of the condo for June 30, 1992.

In lieu of a forced sale Debtor and her husband requested that they be allowed to sell the condominium and then turn the proceeds over to the Service. Usually, a non-forced sale yields a higher sales price. The revenue officer agreed.

The amount realized from the sale was $40,000.00. Both the Debtor and her husband signed the necessary papers conveying the property on July 7, 1992. The equity in the condominium, $21,806.00., was applied to the Debtor's and to her husband's outstand-

ing tax liability for the 1983 tax year [1]. The sale proceeds however, did not fully satisfy the joint or separate tax liabilities of the Debtor and her husband. As of June of 1992, the Debtor knew the Internal Revenue Service was actively attempting to collect her significant outstanding tax liability.

On July 26, 1992, Debtor purchased a life annuity policy from the United States Life Insurance Company in the amount of $588,356.25. On August 17, 1992, Debtor purchased a single deposit annuity from Metropolitan Life Insurance Co. in the amount of $145,260.00. On August 14, 1992, Debtor purchased a single premium deferred life annuity from American Mayflower Life Insurance Company of America in the amount of $435,782.00.

On October 6, 1992, Debtor signed a petition for relief under Chapter 7. Her attorney was Bernard I. Rappaport. On October 15, 1992, Debtor's petition was filed as a "No Asset" Chapter 7. The schedules attached to Debtor's petition listed the above-mentioned annuities but claimed them as exempt assets. In addition, Debtor listed the following assets: $100.00 of cash on hand; $200.00 held by NCNB in a joint account with her 18 year old daughter; $135.00 in an account at Chase Manhattan Bank; $3,500.00 held as a security deposit on her homestead; $2,000.00 of furniture in her residence; no books, pictures or other art objects, antiques, stamp, coin, record, tape, compact disc, or other collections or collectibles; $250.00 of wearing apparel; $250.00 of costume jewelry; no furs; no firearms, sports, photographic or other hobby equipment; and no interests in any insurance policies. In addition, Debtor listed as exempt the $7,000.00 in an Individual Retirement Account. She valued her 75% ownership interest in her business, Co–Counsel C.S.W., P.C. (hereinafter "Co–Counsel") as $500.00. Co–Counsel has been in existence since 1989. Debtor and Martha Haffey operate offices in Miami Beach, Florida and Manhattan, New York, respectively.

Attorney Arthur Weitzner was appointed as the Chapter 7 Trustee of Debtor's Chapter 7 case. Due to the Debtor's lack of cooperation during the Chapter 7 proceeding, the Trustee obtained an order from the Court on January 19, 1993, compelling the Debtor to allow him to inspect her premises for purposes of obtaining appraisals. The Debtor did not comply in a timely fashion with the Court's order to allow him and his representatives to inspect her premises, although repeated demands were made by the Trustee.

On January 26, 1993, a hearing was scheduled on the Chapter 7 Trustee's Objections to the Debtor's Claimed Exemptions. This hearing was continued three times, first to February 24, 1993, then to March 25, 1993 and finally to April 7, 1993. The matter was never heard by the Court because the Debtor voluntarily converted her case to a proceeding under Chapter 11 on April 6, 1993. On March 1, 1993, Bernard Rappaport was relieved as counsel for the Debtor and the law firm of Stearns, Weaver, Miller, et al, was substituted as Debtor's counsel.

The Debtor converted this case to a Chapter 11 proceeding notwithstanding the fact that she has no business to reorganize nor any reasonable likelihood of rehabilitation.

After its review of the conversion of this case, the United States Trustee's office filed an Emergency Motion for Appointment of a Chapter 11 Trustee. The motion stated *inter alia* that

"... the appointment of Chapter 11 Trustee was in the best interest of creditors because there is a reasonable likelihood that the property of the estate may be improperly transferred by the Debtor during this proceeding if the Debtor is permitted unfettered control of certain property of the estate."

The motion further stated that:

"... property claimed as exempt was purchased from proceeds of non-exempt property approximately six weeks prior to the commencement of these proceedings and at approximately the time the Debtor moved from New York to Florida."

---

**1.** The Debtor's and her husband's joint tax liability for the 1983 tax year as of July 7, 1992, was approximately $709,766057.

The motion also stated that the Debtor had made

"... material omissions from the statement of affairs of the Debtor, in that there were certain transfers to insiders in the total amount of $200,000.00, that occurred within one year of bankruptcy, which transfers were not scheduled as required."

The emergency motion to appoint a Chapter 11 Trustee was supported by the only two listed creditors of the estate, namely, the Service and the State of New York taxing authority. As a result of this emergency hearing, the Court appointed Arthur Weitzner as Chapter 11 Trustee by order dated May 7, 1993.

On August 13, 1993, the Service, filed a proof of claim in the total amount of $1,594,-058.11. This proof of claim amended and superseded the Service's proof of claim dated June 7, 1993. The claim of the Service is comprised of a secured claim, an unsecured priority claim, and an undisputed claim listed by the Debtor in her petition as Item number 2 on Schedule F attached thereto.

The Service's secured claim, in the amount of $1,566,470.11, represents the Debtor's liability for income taxes for the 1980 tax year, which amount was agreed to in the settlement of litigation between the Debtor and the Service in the United States Tax Court. The Service's unsecured priority claim, in the amount of $27,588.00, represents federal income taxes owed by the Debtor for the 1991 and 1992 tax years. The Service's undisputed claim, which was so listed in Debtor's schedules, is in the amount of $757,727.10, and represents federal income taxes owed by the debtor for the 1983 tax year.

▌ As a result of the Debtors agreement with the Service with respect to the 1980 tax year a stipulated decision was entered by the United States Tax Court on September 13, 1989. The decision was not vacated by motion of either party, and was not appealed. The decision became final 90 days thereafter. I.R.C. § 7481.

Accordingly, the doctrine of *res judicata* applies to the Debtor's 1980 federal tax liability. Any issues that could have or should have been raised by either the Debtor or the Service in the Tax Court case are now barred. *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). The Bankruptcy Court lacks jurisdiction to hear any matter pertaining to the 1980 tax year pursuant to 11 U.S.C. § 505(a)(2)(A).

On or about February 2, 1994, the Debtor filed a motion seeking relief from the automatic stay to file an untimely Motion to Vacate the above-mentioned United States Tax Court decision. T.C.Rule 162. On or about February 14, 1994, the Service filed a response stating it had no specific objection to the Debtor's requested stay relief, but noting that such motion in the United States Tax Court was frivolous and that the Debtor's chances of success were virtually nil. To date, the Service has not been informed of Debtor's filing of any motion with the United States Tax Court.

In the eleven months since the conversion of her case, the Debtor has proposed and filed four plans of reorganization and disclosure statements. None of the plans has been confirmable. The Service filed timely rejections and objections to each of the proposed plans.

During the eleven months since the conversion, three confirmation hearings were scheduled in this case. Those hearings were scheduled for November 24, 1994, January 5, 1994 and March 2, 1994, respectively. On November 24, 1993, and January 5, 1994, Debtor's counsel sought continuances which were granted by the Court.

On January 5, 1994, Debtor's counsel requested a 7 day continuance of the second scheduled confirmation hearing. The Court granted the requested continuance over the objection of the Service.

The Court set January 12, 1994 as the deadline for Debtor to file a Third Amended Plan of Reorganization. On January 24, 1994, Debtor's counsel filed the Third Amended Plan of Reorganization after having obtained five ex-parte extensions of time for filing. Each of the Debtor's requested continuances and extensions were granted and the final confirmation hearing was scheduled for March 2, 1994.

In response to the Debtor's Third Amended Plan of Reorganization, only one creditor cast a ballot. The only vote was cast by the Service. The Service filed a timely rejection of and objection to the Third Amended Plan of Reorganization. The Service's objection was based on the following grounds.

First, the Debtor's plan was not confirmable because it failed to provide a liquidation analysis as required by *In re Modern Steel Treating Co.*, 130 B.R. 60, 25 C.B.C.2d 292 (N.D.Ill.1991). Second, the plan violates 11 U.S.C. § 1129(a)(7)(A)(ii) with respect to the Service's claim. Third, the plan violates the provisions of 11 U.S.C. § 1129(a)(7)(B). Fourth, the plan violates 11 U.S.C. § 1129(a)(8); the Service has not accepted the proposed plan and its claims are impaired under the plan. Fifth, the plan is not fair and equitable as the plan does not provide for retention of the Service's lien and thus violates 11 U.S.C. § 1129(b)(2)(A).

A confirmation hearing was held on March 2, 1994. The Service was the only creditor who appeared. The only other listed creditor, an individual unsecured creditor claiming approximately $30,000.00, failed to timely vote or to appear at the confirmation hearing.

The Service maintained its rejection and objections of the Third Amended Plan. Thus, no class of creditors accepted the plan. In addition, the Service moved *ore tenus* for the Debtor's case to be dismissed pursuant to 111 U.S.C. § 1112(b). The Service's dismissal motion was joined in by the United States Trustee's Office, the Chapter 11 Trustee and the counsel for the Chapter 11 Trustee. The dismissal sought was with prejudice to filing another petition for twelve months.

---

**2.** Ordinarily, a bankruptcy dismissal is without prejudice unless the court enters a specific order for good cause shown. 11 U.S.C. § 349(a).

**3.** For cause encompasses the good faith requirement as is evidenced by the pertinent legislative history which states:

"The court will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases."

## II. CONCLUSIONS OF LAW

■ The United States Supreme Court has held that an individual debtor, such as the instant debtor, is eligible to reorganize under Chapter 11 even if that individual does not have an ongoing business. *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). In so holding, the United States Supreme Court validated what had been the law in the Eleventh Circuit for several years. *In re Moog,* 774 F.2d 1073 (11th Cir.1985).

Individuals who file under Chapter 11, however, must conform to the requirements of the law and are governed by the same rules as business debtors. *In re Canion,* 129 B.R. 465, 469 (Bankr.S.D.Tex.1989). In particular, the standards of 11 U.S.C. § 1112(b) govern individual reorganizations under Chapter 11.

Six different grounds support the Service's requested dismissal of this case, with prejudice.[2] Each of these grounds will be discussed separately. The six grounds are:

A. Lack of Good Faith;

B. 11 U.S.C. § 1112(b)(1);

C. 11 U.S.C. § 1112(b)(2);

D. 11 U.S.C. § 1112(b)(3);

E. 11 U.S.C. § 1129(d); and

F. 11 U.S.C. § 1129(a)(10).

### A. Lack of Good Faith

■ In addition to the ten enumerated, but nonexhaustive, grounds found in 11 U.S.C. §§ 1112(b)(1) through (b)(10), section 1112(b) provides that a Bankruptcy Court may dismiss a case "for cause." *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984). Cause encompasses the court's finding of a lack of good faith[3] or in other words, bad faith.[4] Cause is a judicial deter-

---

H.R.Rep. No. 595, 95th Cong., 2d Sess. 406 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6362.

**4.** "The term "bad faith" is not defined by the Bankruptcy Code and there is no single fact, the presence or absence of which, compels the finding of bad faith. Courts have traditionally considered the totality of the circumstances surrounding the case when considering a motion to dismiss a Chapter 11 case for bad faith filing."

mination to be made on a case by case basis,[5] after a consideration of all of the facts and circumstances. *Ibid.* "The facts required to mandate a dismissal based upon a lack of good faith are as varied as the number of cases." *In re Bingham,* 68 B.R. 933, 935 (Bankr.M.D.Pa.1987) (*citing In re Zahniser,* 58 B.R. 530 (Bankr.D.Colo.1986)). In Florida, this Court has required that the case pass a "smell test". *Morgan Fiduciary, Ltd. v. Citizens and Southern Int'l Bank,* 95 B.R. 232, 234 (Bankr.S.D.Fla.1988). The instant case does not pass this Court's smell test.

■ The Court has wide discretion in determining the existence or absence of good faith. In *In the Matter of Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir. 1986), the court stated that in reaching its conclusion the court should make an "on-the-spot evaluation of the debtor's financial condition, motives, and local financial realities." In finding a lack of good faith, courts have emphasized 1) an intent to abuse the judicial process and 2) the purposes of the reorganization provisions. *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984).

■ The instant case is nothing more than a two party dispute between the Debtor and the Service. More importantly, it should be noted that the Debtor, after losing an adversary proceeding by summary judgment motion on the issue of the secured status of her 1980 tax liability, moved this Court to lift the automatic stay so that she may be allowed to request the United States Tax Court to attempt to resolve her dispute with the Internal Revenue Service in the Tax Court. The Service did not oppose this motion, although it did note that Debtor's chance of winning this motion in Tax Court was virtually nil. Thus, it appears that even the Debtor recognizes that this two party dispute should more appropriately be handled between the two parties and that the Bankruptcy Court is not the correct forum for that resolution.

*In re Punta Gorda Assoc.,* 143 B.R. 281 (Bankr. M.D.Fla.1992).

5. Good faith or the lack thereof must be determined on a case by case basis. *In re Bingham,* 68 B.R. 933, 935 (Bankr.M.D.Pa.1987).

In the instant case, the facts do not show that the Debtor is a poor, unfortunate, debtor in need of a "fresh start". Nor do the facts show that the Debtor has tried her best, but failed, to pay her debts to her sole creditor.[6] To the contrary, the facts show that the Debtor has made every effort to avoid paying her sole creditor. Specifically, at a time when the Debtor was aware that the Internal Revenue Service was actively attempting to collect her tax liability, the Debtor chose not to pay her tax liability but instead to convert nonexempt assets into exempt assets.

In addition, the record shows that during the year prior to her filing of her petition, the Debtor fraudulently conveyed $200,000.00 to her children. (United States Trustee's Emergency Motion to Appoint a Chapter 11 Trustee; Debtor's First Amended Plan of Reorganization) It should also be noted that three of the Debtor's previous unconfirmed plans proposed that the Debtor keep significant assets while at the same time not fully satisfying her tax liability. In particular, the Debtor's previous plans proposed she keep one of the annuity policies and that her children disgorge to the estate only $100,000.00 of the $200,000.00 of fraudulently transferred funds. In addition, none of the Debtor's plan proposed payments over time to the Service from post-confirmation earnings. As will be discussed in more detail later, the Service's secured claim is not provided for as required by the Bankruptcy Code in that its lien is not retained by the Debtor's Third Amended Plan of Reorganization or any of the prior proposed plans.

Thus, the facts of this case, are quite similar to the facts in *In re Brown,* 88 B.R. 280 (Bankr.D.Hawaii 1988). In *Brown* the Debtor, a capable doctor, able to earn substantial future income actively attempted to avoid paying, either partially or fully, his only creditor by attempting to remove his assets from

6. The Internal Revenue Service asserts that it is the Debtor's sole creditor based upon Debtor's counsel's statements to this Court that the claim of the New York taxing authority has been disallowed by default judgment and that the unsecured claim of Martha Haffey has been withdrawn as of the confirmation hearing on March 2, 1994.

the reach of his creditor and thus abusing the purpose of the Bankruptcy process. As in *Brown,* this Debtor has obviously sought to avoid paying her full tax liability despite her obvious ability to do so over time. Thus, this case should be dismissed, as was the *Brown* case.

Other facts in the record equally support the Court's finding of a lack of good faith. First, the Debtor's schedules reflect that in addition to the sizeable secured claim of the Service, the Debtor has only one minor unsecured creditor, an individual to whom the Debtor allegedly owes approximately $30,000.00. The Debtor is not in arrears to any other creditor. Second, the Debtor is an individual with no business activity to be continued in bankruptcy. Indeed, the Debtor's fourth proposed plan of reorganization is a plan of liquidation with no ongoing business contemplated. However, the Debtor does have a business enterprise to operate.

In particular, the Debtor, a fifty one year old woman with a Ph.D. in Social Work, owns a 75% interest in a corporate entity known as Co–Counsel, C.S.W., P.A., which provides counselling services to women experiencing divorce. This counselling service business however, is not in bankruptcy. The schedules attached to the Debtor's petition reflect that she earned approximately $40,000.00 from this entity in the year prior to her original petition filing. More importantly, as a majority owner, Debtor is in control of her earnings from this entity. Throughout this Chapter 11 proceeding, the Debtor has misled the Court by alleging that she has no source of income other than the income produced from the annuities purchased just before her petition. For example, on two separate occasions this Debtor requested this Court, on an emergency basis, to order the chapter 11 Trustee to distribute to her some of the income from the annuities to pay her personal living expense. A review of the entire record reveals that the Debtor should easily be able to meet her personal expenses with the income she could/does earn from Co–Counsel, C.S.W., P.A.

Third, the only reason the Debtor filed for bankruptcy and desires to continue in bankruptcy is to delay or frustrate the collection efforts of her sole secured creditor. Since the Debtor does not have a business in bankruptcy to rehabilitate, it is apparent that this case was filed not for the honest purpose of effecting a reorganization. *See In re Phoenix Piccadilly Ltd.,* 849 F.2d 1393 (11th Cir. 1988); *In re Maggaro,* 84 B.R. 803 (Bankr. M.D.Fla.1988). This obvious intent to abuse the judicial system is sufficient to constitute cause, or bad faith under section 1112(b). *In re Phoenix Piccadilly Ltd.,* 849 F.2d 1393 (11th Cir.1988); *In re Natural Land Corporation,* 825 F.2d 296, 298 (11th Cir.1987). *In re Maggaro,* 84 B.R. 803 (Bankr.M.D.Fla. 1988).

As was illustrated in the discussion of the facts above, the Debtor was well aware of her outstanding federal tax liabilities and of the Service's active efforts to pursue collection against her at the time she purchased the exempt annuities and at the time she filed her original petition. The Debtor's conduct before and during these proceedings must also be considered in determining bad faith. For example, the record reveals the following factors: 1) the Debtor was uncooperative with the Chapter 7 Trustee; 2) the Debtor untimely complied with this Court's order to allow the Chapter 7 Trustee's inspection of her property; 3) the Debtor has misled this Court as to her true financial condition; 4) the Debtor fraudulently conveyed approximately $200,000.00 to her children prior to her filing of the petition, which money has not been brought into the estate as of this date; 5) the Debtor has taunted this Court's and her creditor's patience with her repeated requests for extensions of time and continuances.

Taken together, the Debtor has exhibited a "pattern of conduct" that is aptly characterized by the term bad faith. *In re Charfoos,* 979 F.2d 390, 394 (6th Cir.1992). In sum, the totality of the facts and circumstances support a dismissal of this case, with prejudice, based upon a lack of good faith.

*B.   11 U.S.C. § 1112(b)(1):*

■  In addition to, or in the alternative to, a lack of good faith dismissal under 11 U.S.C. § 1112(b), 11 U.S.C. § 1112(b)(1) supports a dismissal of this case provided its two

pronged test is satisfied. First, there must be a continuing loss to or diminution of the estate. Second, there must be an absence of a reasonable likelihood of rehabilitation. Both prongs of section 1112(b)(1) are satisfied in this case.

First, almost a year and a half has passed since the filing of the original petition in this case and no distributions have been made to the sole creditor, the Internal Revenue Service. Equally noteworthy is the fact that during that same time significant administrative expenses have been incurred by the estate. Some of the administrative expenses have already been paid, pursuant to the Court's authorization. For example, the record reveals that the Debtor paid her first attorney, Bernard I. Rappaport, the sum of $5,000.00 to file her Chapter 7 petition. Also, the record reveals that the Debtor has paid her new attorney an additional $5,000.00 retainer.

Further professional fees continue to be requested by the Debtor's attorneys. The Debtor's attorney in turn hired Debtor's Special Tax Counsel who presently seeks additional fees from the estate. The Special Tax Counsel in turn hired an accountant to the Special Tax Counsel who likewise is presently seeking additional fees from the estate. In addition, significant administrative expenses have been and continue to be incurred by the Chapter 11 Trustee and his counsel, who have already received interim distributions from the estate.

The above-noted professionals are not the only parties requesting or receiving payments from this estate. The Debtor herself, as discussed above, has requested and received several thousands of dollars from the estate for her personal expenses. There is no doubt that as each of the administrative expenses are paid and as the Debtor receives payments from the estate, the estate continues to suffer loss or to diminish.

Furthermore, as stated above, the proposed plan is a liquidating plan. Thus, Debtor neither seeks to nor is able to show a reasonable likelihood of rehabilitation. As pointed out previously, the Debtor does not want to pay her sole creditor fully over time via her Chapter 11 case. Instead, the Debt-

or is merely seeking to frustrate the collection efforts of her *sole creditor*, the Service.

The Debtor proposes that the amount to be paid to the Service pursuant to her plan will fully satisfy its claim. However, the proposed plan does not provide for retention of the Service's lien as required by 11 U.S.C. § 1129(b)(2)(A). The proposed plan's failure to provide for this lien retention was not inadvertent. The fact that the Debtor does not offer any of her post petition earnings from her closely held business in her plan as an attempt to satisfy *over time* the Service's claim, evidences that the lack of a lien retention provision was not unintentional.

■ Rehabilitation means something more than reorganization. *In re Economy Cab and Tool Co., Inc.*, 44 B.R. 721 (Bankr. D.Minn.1984). Clearly this liquidating plan that does not include all of the debtor's assets, (i.e., the $200,000.00 fraudulent conveyance to her children and the lack of inclusion of the Debtor's post petition earnings) fails to prove the requisite reasonable likelihood of the Debtor's rehabilitation. The Debtor does not seek rehabilitation by this plan, but instead seeks to frustrate the collection efforts of her sole creditor. Accordingly, the Debtor has failed to prove her honest desire to rehabilitate. Thus, this case should be dismissed.

*C. 11 U.S.C. § 1112(b)(2)*

■ Section 1112(b)(2) authorizes dismissal of a Chapter 11 case based upon the Debtor's inability to effectuate a plan. This Debtor has been in Chapter 11 for over eleven months. During such time the Debtor has proposed four unconfirmable plans. The present plan was not accepted by any class of creditors.

In addition, all interested parties, the Service, the United States Trustee, the Chapter 11 trustee and the counsel for the Chapter 11 trustee all support dismissal of this case, with prejudice. The Court's finding that the Debtor is thus unable to effectuate a plan that would be confirmable is clearly supported by the record. *In re Fossum*, 764 F.2d 520 (8th Cir.1985); *Hall v. Vance*, 887 F.2d 1041 (10th Cir.1989); *In re Oliver*, 142 B.R. 486 (Bankr.M.D.Fla.1992).

958

### D. 11 U.S.C. § 1112(b)(3)

█ Section 1112(b)(3) provides for a dismissal of a Chapter 11 case when there has been unreasonable delay that is prejudicial to creditors. In *In the Matter of Cassavaugh,* 44 B.R. 726 (Bankr.W.D.Mo.1984), the Debtor's Chapter 11 case was dismissed with prejudice based upon, *inter alia,* section 1112(b)(3). The facts in *Cassavaugh* were even less egregious than the instant facts. In *Cassavaugh,* it was held that the passage of eight months with no confirmable plan constituted unreasonable delay prejudicial to creditors. Thus, this case which has been in Chapter 11 for over eleven months clearly constitutes an unreasonable delay prejudicial to creditors.

In *In the Matter of Koerner,* 800 F.2d 1358 (5th Cir.1986), the Fifth Circuit held that sixteen months without a confirmable plan constituted unreasonable delay that was prejudicial to the creditors. As stated, this case has been in Chapter 11 for more than eleven months. However, prior to that time, the Debtor had enjoyed the Bankruptcy Court's protection for almost six months under Chapter 7. Thus, in this case too, sixteen months have elapsed; and the Internal Revenue Service has been prejudiced because it has been prevented from pursuing collection against the Debtor or her assets and the estate is being diminished by administration expenses. Accordingly, the record supports a dismissal of this case pursuant to 11 U.S.C. § 1112(b)(3)

### E. 11 U.S.C. § 1129(d)

█ Finally, Debtor's Third Amended Plan of Reorganization fails to retain the Service's lien as is statutorily required by 11 U.S.C. § 1129(b)(2)(A). Through this bankruptcy proceeding, the Debtor is merely seeking to avoid paying her entire outstanding federal tax liability. The Debtor intends to only pay that amount of her tax liability provided by the plan. Thus, Debtor seeks a "head start" with respect to her tax liability. Though honest debtors are entitled to "fresh start" pursuant to the Bankruptcy Code and Court, debtors are not entitled to this "head start". This concept was succinctly stated by the United States Supreme Court as follows:

The Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors. Good faith and candor are necessary prerequisites to obtaining a fresh start. The bankruptcy laws are grounded on the fresh start concept. There is no right, however, to a head start.

*In re Zick,* 931 F.2d 1124, 1129–1130 (6th Cir.1991), *citing In re Jones,* 114 B.R. 917 (Bankr.N.D.Ohio 1990) (*citing Local Loan v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

█ 11 U.S.C. § 1129(d) provides that the Court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes. *See In re Maxim Indus. Inc.,* 22 B.R. 611 (Bankr.D.Mass.1982). The record in this case supports this Court's finding that the principal purpose of the Third Amended Plan of Reorganization (and all of the prior plans), is to avoid paying the Debtor's full tax liability to the Service. In light of the fact that the Debtor has significant post petition earning potential that could reduce her tax liability, that is not included in her plan the Debtor's plan clearly fails 11 U.S.C. § 1129(d). "It is morally and legally unconscionable that a person should be able to extinguish his obligations without first making a reasonable effort to fulfill them.: *In re Hudson,* 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985). *See also In re Krohn,* 886 F.2d 123 (6th Cir.1989); *In re Herberman,* 122 B.R. 273 (Bankr.W.D.Tex.1990).

### F. 11 U.S.C. § 1129(a)(10)

█ Notwithstanding the passage of eleven months and four proposed plans, no class accepted Debtor's Third Amended Plan of Reorganization. Thus, under the authority of 11 U.S.C. § 1129(a)(10) the plan is nonconfirmable and the case should be dismissed with prejudice. *See In re Cassavaugh,* 44 B.R. 726 (Bankr.W.D.Mo.1984).

## III. CONCLUSION

Based on the facts as found above and the law set forth herein, it is ORDERED, ADJUDGED AND DECREED, that the United States' Motion for Dismissal With Prejudice be and hereby is GRANTED;

FURTHER ORDERED AND ADJUDGED this dismissal is with prejudice to the Debtor filing any petition for relief under Title 11 of the United States Code in any court for a period of one year, which period shall commence on the date of this order.

DONE AND ORDERED.