146 B.R. 118 (1992)
In re Carl C. and Dolores FUNK, Debtors/Appellants.
Civ. A. No. 92-3143 (JEI).
United States District Court, D. New Jersey.
October 6, 1992.
Law Offices of John W. Hargrave by John W. Hargrave, Neil Parille, Westmont, N.J., for debtors/appellants.
J. Eric Kishbaugh, Voorhees, N.J., for Glendale Nat. Bank.

OPINION
IRENAS, District Judge:
Debtors, Carl C. Funk, Jr. and Dolores M. Funk, appeal from an Order of the Bankruptcy Court dated June 22, 1992, (Honorable Rosemary Gambardella, Judge) denying an application pursuant to 11 U.S.C.A. § 1307(d)[1] to convert debtor's *119 Chapter 13 case to a case proceeding under Chapter 11 (11 U.S.C.A. § 1101 et seq.). On the same day Judge Gambardella signed an order staying her denial pending appeal.
This case had previously been dismissed by the bankruptcy court on December 30, 1991, due to debtors' failure to file a plan and summary as required by the Bankruptcy Rules. At the time the bankruptcy court took this action there was pending undecided debtors' application to convert the case to Chapter 11. On February 19, 1992, solely to permit adjudication of the conversion application, Judge Gambardella vacated the earlier dismissal. Since the debtors have not challenged the correctness of the earlier dismissal, absent a conversion to Chapter 11, the affirmance of Judge Gambardella's June 22, 1992 order denying conversion would also operate as a dismissal of the entire case.
For reasons hereafter set forth, Judge Gambardella's order will be affirmed and the pending Chapter 13 case dismissed with prejudice.
Standard of Review
In reviewing an order of the bankruptcy court, the district court must apply the "clearly erroneous" standard to the bankruptcy court's findings of fact, but the conclusions of law are subject to plenary review. Bankruptcy Rule 8013; see also J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp., 891 F.2d 66, 69 (3d Cir.1989).
There was no testimony taken and no exhibits offered in support of debtors' application to convert. The only evidence before the bankruptcy court was the debtors' petition and the record of the proceedings. Judge Gambardella's denial of debtors' application to convert the case to Chapter 11 was based on the legal conclusion that debtors had not demonstrated a legal right to such a conversion.
Procedural History
Debtors filed this Chapter 13 case on September 27, 1991. Considering that the case is more than one year old, very little has happened. There are 29 entries on the clerk's docket sheet, of which nos. 9 through 29 deal with the conversion application. Entry no. 1 is the petition itself, while the very next entry is an order to show cause, dated November 4, 1991, why the case should not be dismissed.
Section 1321 of the Bankruptcy Code provides that "The debtor shall file a plan." Although there is no time limit for the filing of a plan, the statute is implemented by Bankruptcy Rule 3015(b) which requires that a debtor either file a plan with the petition or "within 15 days thereafter, and such time shall not be further extended except for cause shown and on notice as the court may direct." Up to today no plan has been filed, and no application for an extension has been made to the court.[2]
Debtors responded to the court's order to show cause why the case should not be dismissed by filing an application on November 18, 1991 to convert the case to one under Chapter 11. While this application was pending, the bankruptcy court acted on the previously issued order to show cause and dismissed the entire case without prejudice on December 30, 1991.
On February 19, 1992, Judge Gambardella, apparently on her own motion, vacated the prior order of dismissal. It is not clear from the court docket whether the Standing Chapter 13 Trustee, Robert M. Wood, Esq., or the attorneys for any creditor, were aware that the case was being restored *120 to the calendar.[3]
More than three months passed until the conversion application was heard by the bankruptcy court on May 18, 1992, and more than another month until the order denying the requested relief was actually signed on June 22, 1992.
Although she did not make specific findings of fact or conclusions of law, the basis of Judge Gambardella's decision to deny the conversion motion are clearly set forth in the court transcript of May 18, 1992:
I think that the debtors carry at least some burden of demonstrating that they have the ability to propose a plan within a reasonable period of time. All that this file reflects is an inability because of a lack of income to propose any plan under Chapter 13 and to make any payments on account of secured obligations, and to convert this case now to a Chapter 13 based on the debtor's application that says that we do not anticipate receiving in the near future monies on a mortgage receivable that are due us and that we cannot propose a confirmable Chapter 13 plan, but that apparently the debtors can propose, as I understand it, a confirmable Chapter 11 plan within a reasonable period of time, but the facts don't support that. Now, I'm not going to enter an order that just delays creditors further. This was a voluntary filing, not an involuntary filing. Debtors have had the benefit of bankruptcy relief for eight months. I don't believe that there has been cause shown that Chapter 11 relief is in order here. . . . I think the debtors have to at least come forward with some reasonable prospect of reorganization in a Chapter 11 once there has been a determination that there are no prospects in a Chapter 13, and that's the reason why I'm denying the motion.
(Transcript of May 18, 1992 Hearing, at 10-11 to 11-8 and 11-19 to 11-24) (hereinafter referred to as "Tr. at ___").
Debtors' only "adversary" in this proceeding to date has been Glendale National Bank, which holds a $100,000 mortgage on their residence in Oaklyn. It was the bank's foreclosure proceedings on this indebtedness which seems to have prompted the Chapter 13 filing. There have been no payments on this mortgage with respect either to pre-petition or post-petition indebtedness. It is unclear from the record if any other creditor has received payment on its debt.
The Voluntary Petition
An understanding of this appeal also requires an examination of the voluntary petition filed by the Funks on September 27, 1991. In the context of a Chapter 13 filing it is most unusual in that it shows assets with a total value $6,812,693, and debts of just $132,815 which, on a net worth basis, would surely make the debtors among New Jersey's richest citizens. The petition also appears to be inaccurate or carelessly prepared in a variety of ways:[4]
1. Schedule A of the petition which lists real property owned by the debtors in fee simple includes three properties located in Atlantic City, all of which are indicated as being free and clear of liens: 151 South North Carolina Ave. ($5,700,000); 2700 Absecon Blvd. ($341,000); and 3709 Sunset Ave. ($41,000). The only other real property on the Schedule is the family abode in Oaklyn which is listed has having a value of $220,000 subject to a mortgage of $100,000.
There appear to be two inaccuracies in this schedule. The property at South North Carolina Ave. is not owned by the debtors, but by a corporation which may be named Falcar Inc. Carl Funk is alleged to *121 own a majority of the stock, while his wife and children own the remainder. The same is true of the property at 2700 Absecon Blvd., which is a commercial parcel owned by a corporation called Carl C. Funk, Jr. Inc. There is a large advertising sign located on the property.
2. Schedule I of the petition requires the debtors to list income from all sources. It contains nothing but zeroes, even though in the answer to Question 1 on the Statement of Financial Affairs the debtors list their "Income, year to date" as $25,000. In a final question on Schedule I about anticipated changes in income during the following year, the debtors refer to the possible collection of a $95,000 mortgage by reason of the sale of a bar in December and rental payments on "sign lease" of approximately $40,000 in May of 1992.
Apart from the sketchiness of the disclosure and the improbability that the debtors have not a single penny of current income, the petition on its very face would suggest that the debtors are not individuals "with regular income" as would be required of a Chapter 13 debtor. 11 U.S.C.A. § 109(c).
3. The same improbability and confusion surrounds Schedule J, a listing of the current expenditures of the debtors totalling $1,773. The summary at the bottom shows "0.00" income to meet the expenditures and the amount of "$_ 409.15" as the "amount to be paid into the plan on a weekly basis." Although at first this negative number appears unrooted to anything in the schedule, it can be calculated simply by multiplying the negative monthly expenditure figure by 12 and dividing the product by 52. If nothing else, one can certainly infer from this schedule that there was no real intent to file a Chapter 13 Plan as required by Bankruptcy Rule 3015(b).
4. The petition does not adequately reveal that the property on South North Carolina Ave. is ground leased to a casino on a ninety-nine year lease, entered into in 1965, which currently generates at least $23,000 in rental payments per year and has provisions for escalating payments to reflect increases in the cost of living. This lease also renders the $5,700,000 value placed on debtors' interest in the property wildly excessive, although the asset is probably marketable or good security for a loan.
5. There were changes in the petitioners' financial condition following the initial filing, but none of these changes were revealed in the proceeding before Judge Gambardella. Debtors are now receiving $16,000 per year from the Maxwell Sign Company for use of the property at 2700 Absecon Blvd., and $500 per month in adequate protection payments from the debtor of a $95,000 mortgage secured by property located at 2253 Arctic Ave. in Atlantic City. Mr. Funk has just started to receive social security disability income of approximately $500 per month, so that his total current income exceeds $45,000.00 per year. If he successfully completes the foreclosure on a $400,000 mortgage which he holds on 2800 Absecon Boulevard in Atlantic City, he will be earning another $16,000 per year from the lessee of a sign on the property.
Debtors' Argument
Debtors concede that the bankruptcy court has discretion in deciding an application to convert a Chapter 13 to a Chapter 11, and such application need not be granted as a matter of right. See 11 U.S.C.A. § 1307(d) and (f); Bankruptcy Rule 1017; In re Hebb, 53 B.R. 1003, 1006 (D.Md.1985); and In re Collins, 19 B.R. 209, 211 (Bankr. S.D.Fla.1982).
Two assets of the debtors, the $95,000 mortgage referred to above and a $400,000 mortgage on property located at 2800 Absecon Ave., are affected by the pending bankruptcies of the mortgagors, and in one instance a partner of a mortgagor.[5] The *122 argument seems to come down to the bald assertion that a Chapter 11 reorganization will be possible once the collectibility of these two assets is clarified by the resolution of the mortgagors' bankruptcies.
Debtors attempt to counter Judge Gambardella's reliance on the delay in filing a Chapter 13 plan by arguing:
Debtors have sufficient assets which, when liquidated, will enable them to fund a Chapter 11 plan. The delay was caused by a failure of the clerk's office to properly schedule the Application to Convert. Had the motion been properly docketed for argument and conversion granted, it is highly possible that a Chapter 11 plan would have been proposed by now. To deny Debtors the right to convert to Chapter 11 would be to unfairly punish them for a delay which was not their fault. Therefore, Debtors are not impermissibly delaying or obstructing creditors in the exercise of their rights.
(Debtors' Brief at p. 6).
Finally, debtors attempt draw a favorable inference from the lack of opposition of the Chapter 13 Trustee, Robert M. Wood, Esq., and urged that "Debtors are not attempting to stave off imminent actions by creditors." (Debtors' Brief at p. 7).
The Merits
Since there is no dispute that the bankruptcy court has discretion to grant or deny an application to convert a Chapter 13 to a Chapter 11, there remains the question of what legal standards a reviewing court should apply to measure the exercise of this discretion.
Although there is no specific statutory guidance on this question, there are several provisions of the Bankruptcy Code which suggest standards which might be consulted:
a) 11 U.S.C.A. § 109(g), which bars a debtor from filing a subsequent case under the Bankruptcy Code if the earlier case was dismissed "for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case";
b) 11 U.S.C.A. § 707, which provides in subsection (a) that a Chapter 7 case may be dismissed for a variety of reasons including "unreasonable delay by the debtor that is prejudicial to creditors" and in subsection (b) that a debtor whose debts are primarily consumer[6] debts will have his case dismissed if the court "finds that the granting of relief would be a substantial abuse of the provisions of this chapter";
c) 11 U.S.C.A. § 1112(b) which provides a laundry list of reasons why a Chapter 11 case may be dismissed, including the inability to effectuate a plan and debtor's unreasonable and prejudicial delay; and
d) 11 U.S.C.A. § 1307(c) which permits dismissal of a Chapter 13 case for much the same reasons as in Chapter 11, including unreasonable and prejudicial delay and failure to timely file a plan.[7]
Although not specifically found in the Bankruptcy Code, there is a growing body of law permitting the dismissal of cases under either Chapter 11 or Chapter 13 on the basis of a "bad faith filing."[8] In Chapter *123 11 cases this power is usually said to derive from the provisions of § 1112(b) even though "good faith" is not one of the specifically listed factors in the statute. E.g., Matter of Elmwood Development Co., 964 F.2d 508, 510 (5th Cir.1992); In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir.1984).
Since almost all Chapter 13 cases, unlike those filed under Chapter 11, are accompanied or immediately followed with a filed plan, good faith arguments generally center around the provisions of § 1325(a)(3). See In re Waldron, 785 F.2d 936 (11th Cir.1986), cert. dismissed sub nom Waldron v. Shell Oil Co., 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986). However, the similarity between § 1112(b) and § 1307(c) suggests no reason that a Chapter 13 case could not be dismissed for a bad faith filing even before a plan is filed. Indeed, the absence of a filed plan is probably more relevant to a determination of the good faith issue in a Chapter 13 proceeding than in Chapter 11.
The various Bankruptcy Code provisions cited above and the developing law on bad faith filings all spring from the notion that "The bankruptcy laws are intended as a shield, not as a sword." In re Penn Central Transportation Co., 458 F.Supp. 1346, 1356 (E.D.Pa.1978). Good faith is explained in Matter of Elmwood:
The good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws. The good faith determination depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. A collation of factors, rather than any single datum, controls resolution of this issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case.
964 F.2d at 510.
With these standards in mind, we can proceed to review the record before us and the decision of Judge Gambardella in denying a conversion of the case to Chapter 11.
1. The financial information provided to the bankruptcy court in the original petition, in the application for conversion and in the brief on this appeal can, charitably, be described as incomplete, inaccurate and, on occasions, misleading. There is nothing which goes more to the heart of the integrity of the bankruptcy process than the obligation of debtors and their attorneys to make full and fair disclosure of the debtor's financial affairs. This burden is particularly heavy when, as now, there is a nationwide shortage of judicial and court personnel to handle the large number of filings.[9]
2. Given the substantial value of unencumbered assets, the relatively small amount of unsecured debt, and the apparent lack of interest of any creditor (save, of course, the mortgagee of debtors' residence) in this proceeding, the obvious question arises  what did the debtors gain by filing. Although debtors deny an intent "to stave off imminent actions by creditors. . . .", (Debtors' Brief at p. 7), the record clearly demonstrates that frustrating the mortgagee is the only rational explanation for this filing. Except for the foreclosure instituted by Glendale National Bank, there is no evidence of any other pressure by creditors on the debtors.
The filing of a petition "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights" is classic evidence of bad faith. In re Albany Partners, Ltd., 749 F.2d at 674. The failure to timely file a plan, to reveal changes in their financial condition or make post-petition mortgage payments is further evidence of this intent.
*124 3. Section 109(g) refers to a debtor's failure to properly prosecute a case, while §§ 707(a)(1), 1112(b)(3) and 1307(c)(3) all incorporate the concept that a debtor is required to proceed promptly and in accordance with the Bankruptcy Rules and court orders in prosecuting a case. Debtors do not come close to meeting this standard. Neither a proposed plan nor plan summary was filed within 15 days as required by Bankruptcy Rule 3015(b) and Local Bankruptcy Rule 13-2 A. No leave of court was sought to extend the time period. After waiting almost two months the only action taken by debtors was the application to convert.
Debtors' attempt to justify their dilatory behavior is to argue that the court lost the November 18, 1991 application to convert to Chapter 11. Whether or not this is so, it is irrelevant to the issues. It was the duty of the debtors, particularly in light of their non-compliance with Bankruptcy Rule 3015(b), to follow up with the clerk of the court or the judge to get the matter listed for hearing. A simple telephone call or letter would have uncovered the "lost" filing.
4. Debtor's brief argues that "Subsequent to the filing of the Petition, it became apparent that they did not have a steady income." This facile explanation is totally inconsistent with the petition itself. Because the petition clearly contains inaccurate information, it is not possible at this juncture to determine whether on September 27, 1991, the date of filing, petitioners qualified as Chapter 13 debtors under § 109(c). However, on its face the petition does not show either debtor to be "an individual with regular income." Filing a petition which does not facially demonstrate that the debtors are entitled to the relief sought is certainly evidential on the issue of good faith.
5. Failure to timely file a plan is a factor considered in determining whether to dismiss a Chapter 11 or 13 petition. §§ 1112(b)(4) and 1307(c)(3). This factor clearly and properly weighed heavily in Judge Gambardella's decision to deny conversion:
It hasn't been made clear to me how individuals who for eight months cannot propose a Chapter 13 plan believe that they can now propose a Chapter 11 plan.
(Tr. at 7-9 to 7-12).
Judge Gambardella emphasized, and we agree, that debtors have failed to demonstrate, even at the minimal level of making a prima facie case, that "they have the ability to propose a plan within a reasonable period of time" or that there is "some reasonable prospect of reorganization in a Chapter 11."
Even at this late date debtors have failed to set forth a plan which would be proposed in Chapter 11. While a debtor is entitled to file a proposed Chapter 11 Plan with the petition, 11 U.S.C.A. § 1121(a), it is not unusual for time to pass until a plan is proposed. Here, in a case with valuable unencumbered assets, little pressure from creditors, and the passage of more than a year from the original filing, the failure to suggest a proposed plan in connection with the conversion application is highly evidential not only on the issue of good faith, but on the question of whether one can reasonably anticipate a confirmable plan.
In re Waldron involved a Chapter 13 filing by debtors who, in fact, had no debts and owned "a home in Coral Gables, Florida valued at $125,000 and an impressive portfolio of stocks." 785 F.2d at 938. The motivation behind the filing was an effort to reject an option agreement which contained terms unfavorable to the debtors. In reversing a district court decision confirming a plan, the court wrote:
Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, as we do here, confirmation must be denied.
Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy *125 process by refusing to condone its abuse.
The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.
785 F.2d at 941.
An order will be entered affirming Judge Gambardella's order of June 22, 1992, denying the application to convert this proceeding to Chapter 11. Because the order of February 19, 1992, was premised solely on the pendency of the application to convert, the matter will be remanded to the bankruptcy court with a direction to vacate that order and leave standing the Order of Dismissal entered on December 30, 1991.
NOTES
[1] Title 11 U.S.C.A. § 1307(d) and (f) state in relevant part:

(d) Except as provided in subsection (e) of this section, at any time before the confirmation of a plan under section 1325 of this title, on request of a party in interest . . . and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11. . . .
* * * * * *
(f) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.
[2] Rule 13-2 A. of the Local Rules of Bankruptcy Practice requires that each Chapter 13 plan filed by a debtor be accompanied by a "summary" prepared on a form made available by the Clerk. This summary, which must be signed by the debtor's attorney, is used by the Clerk to prepare a notice of the initial meeting of creditors required by 11 U.S.C.A. § 341(a). Because no plan or summary was ever filed, there was no first meeting of creditors in this case.
[3] By letter dated September 28, 1992, Mr. Wood has informed the Court that he was not aware that the dismissal had been vacated until he received notice of the appeal of the denial to convert the case to Chapter 11. In fact, on February 5, 1992, Mr. Wood filed his "Final Report and Account" reflecting that the "Case has been DISMISSED prior to the confirmation of the plan."
[4] Because of some confusion on the face of the petition, Mr. Funk was asked to testify under oath at the hearing on the appeal. His testimony is the source of most of the clarifying information in this opinion.
[5] The brief of debtors' attorney on this appeal contains significant factual errors, including a representation that the major asset of the estate, the property at South North Carolina Ave., is affected by a third party bankruptcy  which it is not. (See Debtors' Brief at p. 2). Debtors' perfunctory "Application To Convert Case to Chapter 11" continues the pattern of incomplete and erroneous factual disclosure. After alleging that as a consequence of their inability to collect the $95,000 mortgage "we can no longer present a confirmable Chapter 13 Plan" (Para. 4), the application goes on to assert that "Three of the properties we own are currently tied up in bankruptcy proceedings pending in this district." (Para. 6). This last statement appears inaccurate or misleading in that the three real estate properties owned by the debtors (other than their residence in Oaklyn) are free and clear of liens and not involved in any kind of litigation. Only the $95,000 mortgage and the $400,000 mortgage are affected by other bankruptcies.
[6] "Consumer debt" is defined in 11 U.S.C.A. § 101(8) as "debt incurred by an individual primarily for a personal, family or household purpose." A mortgage debt secured by the debtor's residence is consumer debt if the proceeds are not used for some business purpose. See, e.g., In re Johnson, 115 B.R. 159 (S.D.Ill.1990) and Guaranty Sav. & Loan Assn. v. Lowe, 109 B.R. 698 (W.D.Va.1990). On this basis it appears that the debts of the debtors in this case are primarily consumer debts.
[7] Both Chapter 11 and Chapter 13 contain provisions which permit confirmation of a plan only if it is filed in "good faith." 11 U.S.C.A. §§ 1129(a)(3) and 1325(a)(3).
[8] "An automatic stay may be terminated for cause pursuant to § 362(d)(1) of the Bankruptcy Code if a petition was filed in bad faith." In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir.1988).
[9] Mr. Wood advises the Court that there are 7,000 to 8,000 Chapter 13 cases under administration.