**In re Chaim TORNHEIM and Chaya Tornheim, Debtors.**

**Bankruptcy No. 94–B–40031 (SMB).**

United States Bankruptcy Court, S.D. New York.

May 15, 1995.

Arthur J. Gonzalez, U.S. Trustee (Diana G. Adams, of counsel), New York City.

Ernest H. Hammer, New York City, for debtors.

Joseph Fischer, Alleged Creditor and Party-in-Interest, New York City.

## MEMORANDUM DECISION GRANTING MOTION TO DISMISS THE CASE AND DENYING THE DEBTORS' MOTION FOR ALTERNATIVE RELIEF

STUART M. BERNSTEIN, Bankruptcy Judge.

The Office of the United States Trustee (the "Trustee") moves to convert, or in the alternative, dismiss this joint Chapter 11 case, which the debtors have done little to prosecute since they filed their petition in January, 1994. The debtors counter that their Chapter 11 case is one in name only, the Court should deem it a Chapter 13 case, and that any fault or failure lies with the Trustee. Alternatively, Mrs. Tornheim seeks to convert her case to a Chapter 13, and Mr. Tornheim seeks to dismiss or convert his case to a Chapter 13.

All the parties agree that this joint case does not belong in chapter 11. The Court further concludes that neither debtor belongs in bankruptcy under any chapter. As a result, and for the reasons set forth below, the Court grants the Trustee's motion to dismiss these cases, and denies the debtors' cross-motions.

### FACTS

The debtors filed their *pro se* joint petition [1] on January 4, 1994. According to their schedules, their property consists of a jointly owned single family house in which they do not reside, $200 in cash and a $300 security deposit. The Federal Home Loan Mortgage Corporation (the "Mortgagee") holds a mortgage on the house, and its total claim exceeds

---

1. Section 302(a) of the Bankruptcy Code provides:

    A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. . . .

the value of the property. Besides the Mortgagee, the debtors owe $314.27 to the Internal Revenue Service and $321.76 to the New York City Department of Finance. Mrs. Tornheim does not owe any other debts. Mr. Tornheim also owes the aggregate sum of $5,850.00 to two trade creditors, $571.33 to the New York City Parking Violations Bureau and a judgment debt in the sum of $13,834.49 to the Bank of New York.

■ The debtors filed their petition in order to stay the Mortgagee's pending foreclosure proceeding involving the single family house identified in the schedules. (See Affidavit of Chaim Tornheim and Chaya Tornheim pursuant to Rule 52 of the Local Bankruptcy Rules ("Rule 52 Affidavit"), at ¶ 4, sworn to January 4, 1994.) By the petition date, the Mortgagee had already submitted a final judgment of foreclosure and sale to the state court, but the state court did not sign it until after the petition date.[2] On June 16, 1994, and following an evidentiary hearing, the Court signed an order granting the Mortgagee relief from the automatic stay to continue the foreclosure proceeding. The debtors appealed from this order, and their appeal is still pending.

Following relief from the stay, the debtors continued to litigate with the Mortgagee, trying to stave off the foreclosure. As discussed below, the debtors removed the foreclosure proceeding to the bankruptcy court, but as a result of a separate proceeding, the Court remanded it. Other than continuing to litigate with their Mortgagee, the debtors have ignored their bankruptcy case.

Consequently, on or about March 1, 1995, the Trustee moved to convert the case to chapter 7, or in the alternative, to dismiss the case. The moving papers state that the debtors have not filed a plan or disclosure statement, have not filed operating reports for any period after April, 1994, and have not paid the quarterly fees called for by 28 U.S.C. § 1930(a)(6).

The debtors do not contest these failures, but nonetheless oppose the motion and move for alternative relief. Mrs. Tornheim, who now contradicts the schedules, contends she is the sole owner of the property,[3] and seeks to convert her case to a chapter 13. Mr. Tornheim seeks to dismiss his case, or alternatively, to convert it to chapter 13.

## DISCUSSION

### A. The Trustee's Motion

#### 1. Introduction

Section 1112(b) empowers the Court to convert or dismiss a chapter 11 case, depending on the best interest of the creditors and the estate, "for cause," including

. . . .

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

. . . .

(10) non-payment of any fees or charges required under chapter 124 of title 28.

■ The factors listed in section 1112(b) are not exhaustive, and the Bankruptcy Code affords a bankruptcy court wide discretion to determine if cause exists. *In re Koerner,* 800 F.2d 1358, 1367 (5th Cir.1986); *In re Gateway North Estates, Inc.,* 165 B.R. 427, 428 (E.D.Mich.1994); *In re Sal Caruso Cheese, Inc.,* 107 B.R. 808, 817 (Bankr. N.D.N.Y.1989); H.Rep. No. 595, 95th Cong., 1st Sess. 405–06 (1977) ("House Report"); S.Rep. No. 989, 95th Cong., 2d Sess. 117–18 (1978) ("Senate Report") U.S.Code Cong. & Admin.News 1978, pp. 5787, 5903, 5904, 6361, 6321. The bankruptcy court can consider other factors that may arise, and use its equitable powers to reach a proper result. House Report 595; Senate Report 989. Any party in interest, as well as the Trustee, can

---

**2.** The state court's execution of the judgment after the filing of the petition is void. *See Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527–28 (2d Cir.1994).

**3.** According to the debtors' cross-motion, Mr. Tornheim conveyed his fee interest to Mrs. Tornheim on December 19, 1990. Prior to the transfer, the Bank of New York had sued Mr. Tornheim and Zvi Fogel, and approximately two months after the transfer, recovered a $13,834.49 judgment against Mr. Tornheim.

make the motion[4], 11 U.S.C. § 1112(b), and the proponent bears the burden of proof. *In re Martin,* 113 B.R. 949, 961 (Bankr.N.D.Ill. 1990), *vacated and remanded on other grounds,* 124 B.R. 69 (N.D.Ill.1991); *In re Sal Caruso Cheese, Inc.,* 107 B.R. at 817.

## 2. The Trustee's *Prima Facie* Case

■ The debtors concede the truth of the Trustee's factual allegations, and therefore, the Trustee has sustained his burden of proof. First, the debtors admit that they have not paid the quarterly fees required under 28 U.S.C. § 1930(a)(6). This omission, without more, provides cause to dismiss or convert the case. 11 U.S.C. § 1112(b)(10) (quoted *supra*).

■ Second, the debtors concede that they have not filed operating statements in over one year. The filing of the petition gives rise to a fiduciary relationship between the debtor and his or her creditors, and the law imposes the same obligations on the individual and corporate chapter 11 debtor. *In re Cohen,* 173 B.R. 950, 954 (Bankr.S.D.Fla. 1994); *In re Heald,* 140 B.R. 817, 818–19 (Bankr.M.D.Fla.1992); *In re Canion,* 129 B.R. 465, 470 (Bankr.S.D.Tex.1989). To reap the benefit of chapter 11, the debtor must pay the price of disclosure; he or she needs to provide financial and other relevant information to the creditors to inform them and the Court about the progress and status of the case:

> Neither the court nor creditors should have to coerce or implore a debtor into fulfilling the obligations imposed upon it. *In re McClure,* 69 B.R. 282, 290 (Bankr. N.D.Ind.1987). Quite to the contrary, when a debtor seeks protection from its creditors, it is constrained to observe both the letter and the spirit of the orders granting it protection and allowing it to operate unless and until it seeks and obtains a modification of those orders. *In re Prime, Inc.,* 26 B.R. 556, 560 (Bankr. W.D.Mo.1983). Timely and accurate financial disclosure is the life blood of the Chapter 11 process. Monthly operating reports

are much more than busy work imposed upon a Chapter 11 debtor for no reason other than to require it to do something. They are the means by which creditors can monitor a debtor's post-petition operations. *In re Chesmid Park Corp.,* 45 B.R. 153, 159 (Bankr.E.D.Va.1984). As such, their filing is very high on the list of fiduciary obligations imposed upon a debtor in possession. *McClure,* 69 B.R. at 289.

*In re Berryhill,* 127 B.R. 427, 433 (Bankr. N.D.Ind.1991); *accord In re Wilkins Inv. Group Inc.,* 171 B.R. 194, 197 (Bankr. M.D.Pa.1994); *In re Citi–Toledo Partners,* 170 B.R. 602, 608 (Bankr.N.D.Ohio 1994).

Refusal or inability to provide financial disclosure sounds the death knell of a chapter 11 case. The failure to file monthly operating statements required by the Trustee's operating guidelines, "whether based on inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings." *In re Roma Group, Inc.,* 165 B.R. 779, 780 (S.D.N.Y.1994); *accord In re Wilkins Inv. Group,* 171 B.R. at 196; *In re East Coast Airways, Ltd.,* 146 B.R. 325, 338 (Bankr.E.D.N.Y.1992); *In re Berryhill,* 127 B.R. at 433; *In re Vallejo,* 77 B.R. 365, 367 (Bankr.D.P.R.1987); *In re McClure,* 69 B.R. 282, 289 (Bankr.N.D.Ind.1987); *see In re Cohoes Indus. Terminal, Inc.,* 65 B.R. 918, 921 (Bankr.S.D.N.Y.1986); *In re Chesmid Corp.,* 45 B.R. 153, 159 (Bankr.E.D.Va.1984). Consequently, the debtors' failure to file monthly operating reports after the April, 1994 period justifies conversion or dismissal.

Third, the debtors do not dispute that they have failed, despite sixteen months in chapter 11, to file a plan and disclosure statement. While the complexity and nature of the case often dictate its pace, a debtor cannot wallow in chapter 11. The debtor must prosecute his or her case to a prompt and successful conclusion through confirmation of a plan. Under section 1112(b)(2), the court may convert or dismiss the case if the debtor lacks the ability to formulate a plan or to carry one out. *In re Hall,* 887 F.2d 1041,

---

4. As a result of the 1986 amendment to 11 U.S.C. § 105(a), the Court can also convert or dismiss a chapter 11 case on its own motion. 5 Lawrence P. King, *et al., 5 Collier on Bankruptcy,* ¶ 1112.03[4], at 1112–40 (15th ed. 1995) ("Collier").

1044 (10th Cir.1989); *In re Martin,* 113 B.R. at 961.

This chapter 11 case is not complex. The individual debtors have no free assets, no business to reorganize, and few creditors to pay. Under the circumstances, the failure to file a plan after sixteen months shows both unreasonable, prejudicial delay and an inability to effectuate a plan, requiring conversion or dismissal. *See Hall v. Vance,* 887 F.2d at 1044 (failure to file a plan within eight months); *In re Koerner,* 800 F.2d at 1368 (failure to file feasible plan after sixteen months); *In re Canion,* 129 B.R. at 470 (failure to file a plan and disclosure statement within ten months); *In re Cohoes Indus. Terminal, Inc.,* 65 B.R. at 921 (failure to file a plan for more than five months).

### 3. The Debtors' Opposition

Although the debtors do not contest these essential facts and consequent failures, they still vehemently oppose the Trustee's motion. Aided by two attorneys (Ernest Hammer and Gerard Zwirn) and one putative creditor/party-in-interest—Joseph Fischer [5]—the debtors raise many objections, all but one being frivolous. First, the debtors contend that although they filed their case under chapter 11, it is one in name only, and should be a chapter 13. If it were a chapter 13, the debtors would not have been obligated to file operating reports or pay the quarterly fees. In a related argument, the debtors charge that the Trustee breached his statutory duty by failing to alert the debtors to the alternative remedy of chapter 13, and by misaddressing a letter reminding them of their duty to pay the quarterly fees.

The Court declines the debtors' invitation to treat this case as a "de facto chapter 13." The debtors filed a chapter 11, and although *pro se* cases sometimes tempt courts to excuse noncompliance with various rules, the law does not establish a separate bankruptcy law for the un-or-under represented. But even if it did, the debtors' inaction still dictates the same result. Although a chapter 13 wage earning debtor does not file operating reports or pay quarterly fees, the debtor must file his or her plan within 15 days of the petition. Fed.R.Bankr.P. 3015(b). These time requirements are stricter than those under chapter 11. *See* 11 U.S.C. § 1121. If the Court treats this as a chapter 13 case, the debtors' failure to file a plan after sixteen months becomes even more egregious, and magnifies their unjustified delay.

■ Further, the debtors—and not the Trustee—created their predicament. The law neither authorizes nor requires the Trustee to advise the debtors of the appropriateness of their chapter 11 filing or other alternative bankruptcy remedies. Congress created the United States Trustee program to remove the bankruptcy judge from the duties of case administration imposed under the former Bankruptcy Act, 1 Collier ¶ 6.01[1] at 6–13, and in particular, to avoid the appearance of bias and cronyism associated with the bankruptcy court's appointment of trustees. *Id.* at ¶¶ 6.01[2] at 6–14, 6.08[1] at 6–46. The Trustees act "as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy system." House Report 88; *accord Citicorp North America, Inc. v. Finley (In re Washington Mfg. Co.),* 123 B.R. 272, 275 (Bankr. M.D.Tenn.1991).

Consistent with this mandate, 28 U.S.C. § 586(a), which sets out the Trustee's duties, directs him, *inter alia,* to appoint trustees and examiners, supervise the administration of cases, monitor the court-appointed fiduciaries and their professionals, monitor the progress of the case, prevent delay and comment and object where appropriate. The Trustee ensures the integrity of the bank-

---

5. Joseph Fischer's opposition consists of pleadings and documents related to an entirely separate case. To call it irrelevant grants it undeserved dignity. In any event, a person who alleges the status of a party in interest must show that he is affected by the reorganization process. *In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 849 (Bankr.S.D.N.Y.1989). Fischer has failed to demonstrate any connection with this case or these debtors except that he notarized their Rule 52 Affidavit. The debtors did not schedule him as a creditor, he never filed a proof of claim, and the debtors did not serve him with a copy of their motion to convert and/or dismiss despite the requirement that such motions must be served on all creditors. Fed.R.Bankr.P. 2002(a)(5). Hence, Fischer lacks standing, and the Court will not consider his submission.

ruptcy process, but does not represent the interests of any of the parties or become their legal advisor.

No statutory mandate directs the Trustee to inform the debtors of the advantages and disadvantages of the various provisions of title 11 that provide bankruptcy relief. *Compare* 28 U.S.C. § 586(a) *with* 11 U.S.C. § 342(b) (directing the clerk to give written notice to certain debtors that indicates each chapter of the Bankruptcy Code under which they may proceed). Further, although the debtors filed their joint case *pro se*, Messrs. Hammer and Zwirn either submitted papers or appeared for them in Court proceedings. If anyone owed the debtors a duty to advise them to convert their case from chapter 11 to chapter 13, and thereby avoid the duty to file operating reports and pay quarterly fees, their lawyers did. The debtors may have a damage claim against their lawyers, but they have no legitimate gripe with the manner in which the Trustee has fulfilled his statutory duties in this case.

■ Similarly, the misdirection of the Trustee's letter regarding the payment of the quarterly fees does not excuse the debtors' noncompliance. The obligation to pay the quarterly fee springs from 28 U.S.C. § 1930(a)(6). The debtors have not shown any mistake of fact, basis for estoppel or excuse for non-payment, and their conditional offer to pay the quarterly fees if the Court orders them to do so is too little and too late. "Ignorance of the law is no excuse in any country. If it were, the laws would lose their effect, because it can always be pretended." Thomas Jefferson, Letter to André Limozin, 22 Dec. 1787, in *Papers of Thomas Jefferson* 12:451 (J. Boyd ed. 1955). The debtors do not require an order of this Court to meet the legal obligations they assumed when they filed their voluntary joint chapter 11 petition.

Third, the debtors charge that the Trustee singled them out for unfair treatment, and imply a denial of Equal Protection. The Equal Protection Clause of the Fourteenth Amendment, made applicable to the Federal Government through the Fifth Amendment, *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976); *see Schneider v. Rusk*, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190,

12 L.Ed.2d 218 (1964); *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954), "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3253, 87 L.Ed.2d 313 (1985); *accord Zahra v. Town of Southhold*, 48 F.3d 674, 683 (2d Cir.1995). The selective enforcement of the law—the gravamen of the debtors' charge—represents a "murky corner of equal protection law." *Le Clair v. Saunders*, 627 F.2d 606, 608 (2d Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). "[C]onscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation [unless] based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *accord Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). To state and prove a claim of denial of Equal Protection based upon selective enforcement, the proponent must make a two-pronged showing:

> A claim of selective application of a facially lawful state regulation requires a showing that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*F.S.K. Drug Corp. v. Perales*, 960 F.2d 6, 9 (2d Cir.1992); *accord Zahra v. Town of Southhold*, 48 F.3d at 683.

The debtors make their charge of selective enforcement in paragraph nine of their April 15, 1995 objections. They allege:

> The U.S. Trustee is also obliged to treat all cases equally. The U.S. Trustee appears to be overly concerned with the instant 1994 chapter 11/13 case, it has yet failed to pursue any pre–1994 ageing [*sic*] chapter 11 cases.

■ Assuming this assertion satisfies the first prong of the test, the debtors ignore the

second prong. They do not state or imply that the Trustee selected their case for dismissal or conversion based upon impermissible discriminatory reasons such as race, religion or gender, or acted with malice or a bad faith intent to injure the debtors. The Court, therefore, deems the debtors' claim insufficient to raise any justiciable Equal Protection issue.

The only claim of substance that the debtors raise involves the sufficiency of service. The Trustee served a single set of motion papers addressed to the debtors at their common residence. The debtors contend, in their opposition, that this fails to meet the requirements of the Bankruptcy Code and Rules, rendering service insufficient and personal jurisdiction wanting. The Court disagrees.

The Trustee's motion commences a contested matter that "is governed by Rule 9014," Fed.R.Bankr.P. 1017(d), and requires service of the motion "in the manner provided for service of a summons and complaint by Rule 7004." Fed.R.Bankr.P. 9014. Rule 7004(b)(9) of the Federal Rules of Bankruptcy Procedure authorizes service of process by first class mail:

> Upon the debtor, after a petition has been filed by or served upon the debtor and until the case is dismissed or closed, by mailing copies of the summons and complaint to the debtor at the address shown in the petition or statement of affairs or to such other address as the debtor may designate in a filed writing and, if the debtor is represented by an attorney, to the attorney at the attorney's post-office address.

■ It does not follow that such service is necessary to subject the debtors to the personal jurisdiction of the bankruptcy court. To the contrary, a debtor submits to the jurisdiction of the bankruptcy court when he or she files a petition. *U.S. v. Wilson,* 974 F.2d 514, 519 (4th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1352, 122 L.Ed.2d 733 (1993); *In re Blair,* 1989 WL 107756 at *2 (D.Kan. Aug. 15, 1989). While this rule may not apply to adversary proceedings that require the service of a summons and complaint, *e.g., Waszkiewicz v. Tuzzolino (In re Tuzzolino),* 71 B.R. 231, 233 (Bankr. N.D.N.Y.1986) (court lacks personal jurisdiction over debtor served with "stale" summons in adversary proceeding to determine dischargeability of debt); *In re Mancini,* 1986 WL 28905 at *15 (Bankr.S.D.N.Y. Mar. .26, 1986) (court lacks personal jurisdiction over debtor in adversary proceeding to determine dischargeability of debt where plaintiff did not serve debtor but served debtor's attorney with summons and complaint), the proponent of a motion to dismiss or convert need not serve a summons and complaint— the traditional act required to confer personal jurisdiction. *See Pennoyer v. Neff,* 95 U.S. 714, 724, 24 L.Ed. 565 (1877). Personal jurisdiction already exists because one who files a petition necessarily submits to the power of the court to dismiss or convert that petition. *Cf. In re Pedro Abich, Inc.,* 165 B.R. 5, 8 (D.P.R.1994) (*sua sponte* conversion did not violate due process).

■ In addition, service of a single set of papers on the debtors provided sufficient notice to satisfy due process. Nothing on the face of Fed.R.Bankr.P. 7004 requires a plaintiff to serve separate copies of the summons and complaint on co-defendant spouses who reside together. Further, one court recently held that single service in this situation satisfies due process as well as Fed. R.Bankr.P. 7004(b).

In *Gazes v. Kesikrodis (In re Ted A. Petras Furs, Inc.)* 172 B.R. 170 (Bankr. E.D.N.Y.1994), the trustee commenced a preference action against a husband and his wife, serving a single summons and complaint upon the defendants at their shared mailing address. The defendants moved to dismiss, arguing, *inter alia,* that process was inadequate. Chief Judge Duberstein first noted that due process was satisfied by notice which is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *In re Ted A. Petras Furs,* 172 B.R. at 177 (quoting *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (internal quotation marks omitted)).

Chief Judge Duberstein concluded that service of a single summons and complaint on a husband and wife satisfied these due process concerns embodied in Fed.R.Bankr.P. 7004(b). The defendants actually received the summons and complaint at their residence and had actual notice of the proceedings. *In re Ted A. Petras Furs*, 172 B.R. at 177. In addition, they appeared and availed themselves of the opportunity to raise objections. *Id.*

These considerations compel the same result here. The debtors never submitted affidavits saying that they did not receive the Trustee's papers.[6] They had the opportunity to oppose the motion and did so. Consequently, service of a single set of motion papers satisfied Fed.R.Bankr.P. 7004(b)(9) and due process.

Moreover, requiring service of separate copies of the motion papers could lead to an anomalous result. Under Fed.R.Civ.P. 4(d)(1), made applicable by Fed.R.Bankr.P. 7004(a), the Trustee could have served either Tornheim by delivering his or her set of motion papers to the other Tornheim at their dwelling house or usual place of abode. *Accord In re Paolino*, 49 B.R. 834, 836 (Bankr. E.D.Pa.1985). If the Trustee could have served both copies on one debtor, he could serve one copy on both debtors. The only difference is that instead of opening just one envelope, the Tornheim who receives service under Fed.R.Civ.P. 4(d)(1) will open two envelopes containing identical papers.

In addition, the debtors filed a single petition. If they can join in one petition, they can be "joined" in the service of motion papers directed at that petition, provided they share the same residence, without violating due process. *Cf.* 26 U.S.C.

§ 6212(b)(2) (authorizing the Internal Revenue Service to mail a single joint statutory notice of deficiency to spouses who reside together and have filed a joint income tax return.).

■ In summary, the Court concludes—subject to disposition of the debtors' cross-motions—that it should grant the Trustee's motion, and dismiss the case rather than convert it to chapter 7. The debtors do not have any property that a chapter 7 trustee could administer for the benefit of creditors. Conversion, therefore, does not serve the interest of the creditors and the estate. *See* 11 U.S.C. § 1112(b).

**B. Debtors' Cross Motion for Alternative Relief**

Beyond opposing the Trustee's motion, the debtors have moved for alternative relief. Mrs. Tornheim seeks to convert her case to chapter 13, and Mr. Tornheim moves, in the alternative, for dismissal or conversion to chapter 13. Mr. Tornheim's request for dismissal has been rendered academic because the Court has granted the Trustee's motion to dismiss his case. Mrs. Tornheim's motion, however, requires further consideration.

Section 1112(d) of the Bankruptcy Code governs conversion of a case from chapter 11 to chapter 13. It states in pertinent part:

The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if—

(1) the debtor requests such conversion;

(2) the debtor has not been discharged under section 1141(d) of this title....

---

6. The declaration of the debtors' attorney, Ernest H. Hammer, dated May 4, 1995, states at ¶ 3 that Mr. Tornheim told him that Mr. Tornheim never provided his wife with a copy of the motion papers. The declaration does not say why not. Mr. Hammer's attempt, in any event, to raise a "service" or "notice" issue falls short. First, his declaration is inadmissible hearsay, and the Court will not consider the statements that it attributes to Mr. Tornheim. Second, if the Trustee complied with Fed.R.Bankr.P. 7004(b), it does not matter whether Mr. Tornheim delivered the motion papers to Mrs. Tornheim. *Cf. Smith v.*

*Kincaid*, 249 F.2d 243, 245 (6th Cir.1957) (Fed. R.Civ.P. 4(d)(1) does not require showing that papers were delivered to defendant by person with whom they were left); *Blue Cross & Blue Shield v. Chang*, 109 F.R.D. 669, 670 (E.D.Mich. 1986) (service under Fed.R.Civ.P. 4(d)(1) effective even though defendant did not actually receive papers); *see generally 4A Charles A. Wright, & Arthur R. Miller, Federal Practice & Procedure* § 1096 at 73 (2d ed. 1987). Third, Mrs. Tornheim's opposition and cross-motion, interposed through Mr. Hammer, proves that she received adequate notice and an opportunity to be heard.

The language of section 1112(d) confers discretion on the bankruptcy court.[7] Neither the statute nor the legislative history, however, explains how the court should exercise its discretion. Although section 1112(d) has not generated case law interpreting the standards for conversion from chapter 11 to 13, courts have construed analogous provisions in 11 U.S.C. § 1307(d)[8]. This section deals with the reverse of the present situation: conversion from chapter 13 to a chapter 11.

A creditor who seeks to convert her case from chapter 13 to chapter 11 (or the reverse) must establish a cause. This requires more than merely showing that the debtor meets the statutory criteria for eligibility under the new chapter. Sections 1307(f) and 1112(f) both preclude conversion to another chapter unless the debtor can be a debtor under that chapter. Thus, to seek *discretionary* relief, the debtor must already meet the eligibility requirements. If proof of eligibility were all the law required, no room would exist for the exercise of any discretion; the Bankruptcy Code would command—not merely authorize—the court to convert the case. Further, it would permit the debtor to convert and reconvert her case between chapter 11 and 13 as often as she pleased.

■ Rather, to establish a *prima facie* case, the movant (here, the debtor) must establish both eligibility to be a debtor under the new chapter and a reasonable prospect for a successful reorganization. *In re Funk*, 146 B.R. 118, 124 (D.N.J.1992). The court may consider whether the debtor has willfully failed to abide by orders of the court or appear before the court to prosecute her case, whether she has caused unreasonable or prejudicial delay or is unable to effectuate a plan and whether she has filed and conducted her case in good faith. *See id.* at 122–23; *accord In re Anderson*, 165 B.R. 445, 448–49 (S.D.Ind.1994). Bad faith depends on the facts and circumstances of the case, and may include filing to frustrate the legitimate rights of the secured creditors as well as the failure to file a plan timely, to reveal changes in financial condition or to make post-petition mortgage payments. *See In re Elmwood Development Co.*, 964 F.2d 508, 510 (5th Cir.1992); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984); *In re Funk*, 146 B.R. at 123.

■ Mrs. Tornheim's motion papers merely recite and rely solely on the statutory criteria for qualifying as a chapter 13 debtor. The motion papers are patently insufficient, fail even to pay lip service to the debtor's need to demonstrate cause, and merit summary rejection. Moreover, application of the *Funk* criteria compels denial of the motion.

First, Mrs. Tornheim has neither appeared nor participated in the Court proceedings that affect her. Specifically, the debtors proceeded *pro se* in opposing the Mortgagee's motion for relief from the stay. Mrs. Tornheim did not appear at the hearing, and Mr. Tornheim, a non-lawyer, purported to represent her interest—it now turns out—as sole owner of the property.

Second, the Court decided to dismiss the chapter 11 case because the debtors delayed unreasonably in filing a plan and failed to effectuate a plan. The Court based this conclusion, in large part, upon the debtors' breach of their fiduciary duty to provide financial disclosure to their creditors, and to propose a plan. Mrs. Tornheim's reflexive motion—motivated by the abject failure of her chapter 11—does not demonstrate how she will now bring to a prompt and successful conclusion a case she has let languish for so long.

Moreover, the failure to provide financial disclosure has added significance on a motion to convert to another chapter. It prevents the Court from determining whether unpaid chapter 11 expenses exist, and if so, whether

---

**7.** To prevent an involuntary chapter 13, however, the statute requires that the debtor request the conversion to chapter 13. In addition, the debtor must be eligible to be a debtor under chapter 13. *See* 11 U.S.C. § 1112(f).

**8.** Section 1307(d) provides, in substance, that prior to confirmation, and upon motion of the United States Trustee or a party in interest, "the court can convert a case under this chapter to a case under chapter 11 or 12 of this chapter." If the debtor is a farmer, the debtor must request the conversion, 11 U.S.C. § 1307(e), and the debtor must be eligible to be a debtor under the new chapter. 11 U.S.C. § 1307(f).

the unpaid chapter 11 creditors become pre-petition creditors or administrative creditors in the converted case. *See* 11 U.S.C. § 348(d). Further, the debtors also misrepresented the true ownership of their only asset, and as far as the Court can see, never amended their schedules. In short, after filing materially false schedules, the debtors made virtually no financial disclosure, and no evidence exists to determine the likelihood of Mrs. Tornheim's successful reorganization.

Third, a chapter 13 serves no objective purpose. The Court has granted relief from the automatic stay, and once the foreclosure sale takes place, Mrs. Tornheim will no longer have any interest in the property. *See Thwaites Place Associates v. Secretary of the United States Department of Housing and Urban Development*, 638 F.Supp. 301, 303 (S.D.N.Y.), *aff'd without op.*, 833 F.2d 1003 (2d Cir.1986); *Ghosh v. Financial Federal Savings & Loan Association (In re Ghosh )*, 38 B.R. 600, 602 (Bankr.E.D.N.Y.1984). She will then be unable to decelerate and reinstate the mortgage through her chapter 13 plan. *In re Ghosh*, 38 B.R. at 602.

Fourth, the Court concludes that the debtors filed their petition without any expectation or desire to reorganize and solely to frustrate the legitimate rights of the Mortgagee. They commenced their bankruptcy only after the state court had resolved all of the issues against them, and the state court judge was about to sign the final judgment that would permit the foreclosure sale to go forward. In their Rule 52 Affidavit, they admit that they filed the case to stay the foreclosure. Standing alone, this does not compel a finding of bad faith.

Nevertheless, immediately after the debtors lost the stay relief litigation, they removed the mortgage foreclosure proceeding, pending in Brooklyn state court, to the United States Bankruptcy Court for the Eastern District of New York. Following in lockstep with the loss of automatic stay protection, the debtors' removal of the foreclosure proceeding delayed the sale further, served no legitimate reorganization purpose, and faced certain remand.[9] In this regard, a bankruptcy court is traditionally reluctant to retain a state court mortgage foreclosure proceeding that has been removed to it. *R.C.R. Services, Inc. v. Sciortino (In re Sciortino )*, 114 B.R. 423, 427 (Bankr.E.D.Pa.1990); *accord, Lomas & Nettleton Co. v. Warren (In re Warren)*, 125 B.R. 128, 132 (E.D.Pa.1991) (adopting recommendation of bankruptcy judge); *Federal Nat'l Mortgage Ass'n v. Rockafellow (In re Taylor)*, 115 B.R. 498, 502 (E.D.Pa.1990) (same); *see e.g., In re Hillyard Farms*, 52 B.R. 1015, 1019–20 (S.D.Ill. 1985); *Citicorp Savings of Ill. v. Chapman (In re Chapman)*, 132 B.R. 153, 158 (Bankr. N.D.Ill.1991); *Marine Bank Appleton, N.A. v. Mill–Craft Bldg. Systems, Inc. (In re Mill–Craft Bldg. Systems, Inc.)* 57 B.R. 531, 534 (Bankr.E.D.Wis.1986); *Howard v. Tipton (In re Tipton)*, 26 B.R. 777, 779 (Bankr. S.D.Ohio 1982); *Family Savings & Loan Ass'n v. Calabria (In re Calabria)*, 5 B.R. 73, 75 (Bankr.D.Conn.1980).

Several characteristics common to mortgage foreclosure proceedings contribute to this reluctance. Mortgage foreclosures are non-core proceedings, and hence, the bankruptcy court cannot enter final orders. *In re Memorial Estates Inc.*, 797 F.2d 516, 518 (7th Cir.1986); *see Prairie State Bank v. Allison*, 72 B.R. 476, 477 (D.Kan.1987); *Aetna Life Ins. Co. v. Danbury Square Assoc., Ltd. Partnership (Danbury Square Assoc., Ltd. Partnership)*, 150 B.R. 544, 547 (Bankr. S.D.N.Y.1993); *In re Chapman*, 132 B.R. at 156–57. Resolution of the issues depends upon state law administered by judges with superior expertise, and principles of comity command deference. *See In re Warren*, 125 B.R. at 132; *In re Chapman*, 132 B.R. at 158; *In re Mill–Craft Bldg. Systems, Inc.*, 57 B.R. at 533; *In re Tipton*, 26 B.R. at 779; *In re Calabria*, 5 B.R. at 75. Where the state court has already decided the issues in the proceeding, retention prejudices the secured creditor, wastes judicial resources and delays the administration of the bankruptcy case. *In re Hillyard Farms*, 52 B.R. at 1019; *In re Chapman*, 132 B.R. at 158–59. Foreclosure

---

**9.** Following a May 3, 1995 hearing, the Court remanded the foreclosure action. *See* 28 U.S.C. § 1452(b).

proceedings often involve third parties, and bankruptcy courts cannot ordinarily hear and decide disputes between non-debtor third parties. *In re Sciortino,* 114 B.R. at 427; *In re Mill–Craft Bldg. Systems, Inc.,* 57 B.R. at 534. Finally, if the bankruptcy court has already granted relief from the automatic stay, retention nullifies its prior order. *In re Mill–Craft Bldg. Systems, Inc.,* 57 B.R. at 534.

The Tornheim foreclosure proceeding shared these common characteristics. The Mortgagee's claim was non-core, and based on state law. The state court had already resolved all of the issues, and was about to enter its final judgment when the debtors filed this case. Therefore, no issues needed to be resolved by this Court, and removal served only to delay. The foreclosure action joined third party, non-debtor defendants. Lastly, the removal deprived the Mortgagee of the rights it obtained through successful prosecution of the relief from stay motion. The debtors could not have entertained any good faith belief that the removal of the foreclosure proceeding served a legitimate purpose in the debtors' reorganization.

In fact, Mrs. Tornheim's present motion seems yet another tactic to circumvent rather than serve the goals of the bankruptcy laws. Charged with ignoring her fiduciary and financial obligations, she seeks to convert the case to avoid the ramifications of her past omissions and future chapter 11 obligations; in chapter 13, Mrs. Tornheim does not have to pay quarterly fees or file operating statements. She has never shown evidence of an intent or desire to comply with the legal requirements imposed by the bankruptcy laws, or to reorganize. Consequently, the Court declines to exercise its discretion to enable Mrs. Tornheim to continue to use of the bankruptcy process.

## CONCLUSION

The Trustee's motion to dismiss the joint case is granted. Mr. Tornheim's motion to dismiss, or in the alternative, to convert to chapter 13 is denied as moot. Mrs. Tornheim's motion to convert to chapter 13 is denied.